CITY OF HOUSTON, Appellant,

v.

LAKEWOOD ESTATES, INC., Appellee.

No. 14296.

Court of Civil Appeals of Texas.

Houston.

July 9, 1964.

Rehearing Denied Sept. 10, 1964.

John Wildenthal, Jr., City Atty., John Gano, Senior Asst. City Atty., Houston, for appellant.

Billy B. Goldberg, Houston, for appellee.

BELL, Chief Justice.

Appellee filed suit to recover from appellant the value of water and sewer lines it alleged had been taken by appellant. The trial court, on trial before the court without a jury, rendered judgment for appellee for $29,293.60 together with interest at the rate of 6% from July 1, 1961.

The facts are largely undisputed. Appellee, a private corporation, was chartered June of 1950 under Subdivision 47 of Article 1302, R.C.S.1925. Its purpose was to erect or repair any building and to accumulate and lend money for such purposes and to purchase, sell and subdivide property in Houston and within a distance of not exceeding two miles beyond the city limits of Houston. In 1948 Louis Saks, the principal stockholder in the corporation, owned a tract of land amounting to some 65 acres that he subdivided into what he called Lakewood Estates. It was subdivided into lots and blocks upon which homes might be built. The plat was approved by the City Planning Commission of the City of Houston and the Commissioners Court of Harris County. The streets, alleys and easements shown on the plat were dedicated to the public. The land constituting the subdivision was conveyed by Mr. Saks to the corporation after its formation on June 13, 1950.

Mr. Saks testified that though a few lots were sold before the addition had been approved for loans by the F. H. A. he soon found out the sale of lots in the addition would not move unless it was approved for loans by the F. H. A. In order for the addition to be approved by F. H. A. it was necessary, among other things, to have water and sewer service available. In November of 1950, appellee entered into a contract with a utility company known as Pinewood Utilities that was serving an addition to the north of, though not adjoining, Lakewood Estates. Langley Road Place was an addition between them. Under the terms of the contract appellee was to lay and pay for the water and sewer lines in Lakewood Estates and the mains that had to pass through Langley Road Place. The line through Langley Road Place was necessary in order to connect with the Pinewood Utilities lines. Pursuant to said agreement appellee laid its water lines in the dedicated streets and the sewer lines in the dedicated easements. It should be noted that the part of Lakewood Estates north of Hall's Bayou lay outside of the City limits of Houston until annexation in 1956. The lines installed by appellee were in the area beyond the City limits.

We need not notice all the provisions of the contract. It contained an agreement by Pinewood Utilities to furnish water and sewer service at prescribed rates to owners of houses in Lakewood Estates. For each house connected a tap charge of $50.00 for the water connection and meter was made and a $100.00 charge was made for the sewer connection. This charge was paid to the utilities company for its use. While the testimony shows the amount of the charge was paid by checks of appellee, the charge

was actually collected from the property owner by appellee. Persons in Langley Road Place were entitled to connect with the line running through that addition upon the payment of a charge to be determined by appellee but not to exceed the amount charged owners in Lakewood Estates. Payment was made to the utilities company, and it paid the amount collected over to appellee. The users of the service, be they owners in Lakewood Estates or Langley Road Place, would make application to the utilities company on forms provided by them. The contract also provided that after one year the water and sewer lines in Lakewood Estates and Langley Road Place would be serviced and maintained by the utilities company at its own cost and expense. The contract recites the contractor laying the lines had the obligation to maintain for the first year.

It was provided that the water and sewer lines constructed should become and remain the property of the party to the contract who paid for the particular facility. It further provided: "The rights and benefits accruing and the obligations incurred hereunder shall extend to the successors and/or assigns of the parties to this contract."

The testimony in the record comes from Mr. Yancey of Pinewood Utilities, Mr. Saks, the president and principal stockholder of appellee, who testified by deposition, and Mr. Goldberg, secretary-treasurer of appellee, who is also its attorney. Mr. Yancey testified largely about the contract and the operation of the Pinewood Utilities. He testified the $150.00 connection charges were paid to his company by checks from appellee. This $150.00 was to help defray the cost of a water production plant and the sewerage treatment plant. Also he testified at the time of the contract the parties discussed the possibility of annexation of the territory by the City of Houston. In what context such discussion was had is not stated but the evidence shows affirmatively that the lines were constructed in conformity to the City of Houston's requirements.

Mr. Goldberg testified that the lots in the addition sold at an average price of $800.00 in addition to the $150.00 collected for the utility connection. He testified the operation of the subdivision had not been at a profit. "The water and sewer lines installed * * * have been taxed for all years subsequent to their installation by the State of Texas and the County of Harris." There was introduced, as an example of the assessment for taxes by the State and County, a tax statement for 1961. The testimony does not show rendition in this fashion by the appellee or its representative. Mr. Goldberg does not testify, and we find no testimony elsewhere, that the taxes thus assessed were paid. We do note, however, that when appellant objected to the introduction of the statement, Mr. Goldberg, the attorney, who was then also a witness, stated it was not contended the City was bound by it, "but the contention is the intention of the retention of these lines. That is material and we think the payment of taxes through the years is evidence of intent on the part of plaintiffs as to ownership." The statement does not reflect whether the taxes were paid or not. He further testified the cost of the lines and their installation was not carried on the books as an expense item but was capitalized and depreciated. There were about 12 lots in the addition north of the Bayou remaining unsold and in the whole addition there were 20 or 25 remaining unsold.

Mr. Saks testified when he went to the F. H. A. to discuss approval of the addition for loans he was told the addition must have water and sewerage. All indebtedness owed by appellee has been paid off. Here it is noted Mr. Goldberg testified that at some time Mr. Saks put additional money in the corporation. How much this was is not shown. The price the lots were to sell for was supposed to take into consideration the cost of the land and the expense of operating the corporation and borrowing money. The cost of the water and sewer lines was one of the expenses the corporation had had. When they undertook to sell the lots they

obligated themselves to the customer to furnish them lots that were served by water and sewer. If he had not the purchaser would not have gone through with the deal. Lakewood Estates has done no maintenance work on the lines. He had an idea the City would some day annex the addition. The engineer (apparently the private engineer in charge of installing the lines) checked at the City Hall and had the plans and specifications approved. The lines were installed for the purpose of providing water and sewer service to the members of the public who bought lots. Everybody out there is using them. The City is now doing just what Pinewood Utilities did, that is, supplying water and sewer service through the lines, the service being contracted for by the individual consumer who pays for the service to the appellant.

In addition to the testimony of witnesses, appellant introduced the various admissions made by appellee in response to request for admissions. The clear effect of the admissions is to establish that Mr. Saks, appellee's predecessor, purchased raw land for the purpose and with the intent of platting, dedicating, developing and improving the land to such an extent that the subdivision would become eligible for F. H. A. insured home financing on houses that would be built on lots in the subdivision. Lots were sold with reference to the approved plat. All water and sewer lines were built to comply with requirements of the City of Houston. Since June, 1961 the City of Houston has furnished service to the customers in Lakewood Estates under individual contracts with the customers. In March, 1951, after correction of a drainage problem the subdivision became eligible for F. H. A. insured home loans. The water and sewer mains were laid in 1950 after the contract wtih Pinewood Utilities. Appellee was engaged in selling lots in the subdivision. Most of the lots sold have houses on them and are owned and occupied as residences by members of the public. After laying of the lines appellee represented to the buyers that water and sewer services were available.

The trial court found appellee executed no written instrument dedicating to the public the utility lines and appurtenances. It also found that appellee by its actions showed a clear intention of retaining ownership of the utility lines and appurtenances. There were other findings not here necessary to notice.

The basic position of appellee is there was never any dedication of the lines to the public and that appellant had appropriated the lines for public use and is obligated to pay therefor.

The substance of appellant's contentions is that by its action appellee dedicated the lines to the public and its assertion of any rights in the lines is repugnant to the grant; that the asserted reservation of rights in the water and sewer lines that were intended to become a part of the City system eventually is contrary to public policy as it interferes with the appellant's exercise of its police power; appellee has no corporate power to own the lines because beyond its charter powers; that by its action appellee is estopped to claim any interest in the lines; and, that appellant has not appropriated the lines without consent because it is doing just what Pinewood Utilities, its successors and assigns, were authorized to do under appellee's contract of November 17, 1950.

The trial court's judgment is undoubtedly based on its finding that appellee, as shown by the evidence, showed an intention to retain ownership of the lines and did not dedicate them to the public.

This finding is attacked by appellant as being without support in the evidence.

■ We are of the view that under all of the evidence, viewing it in the light most favorable to appellee, there is no more than a scintilla of evidence to support the trial court's conclusion that appellee intended to retain title to the lines. Where there is no more than a scintilla of evidence there is no

evidence of probative force. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

The evidence here establishes implied dedication. To be an implied dedication it must be shown that the owner intended to dedicate it to public use. This intent may be shown by unequivocal acts and declarations by the owner. It is the intent as reflected by declarations or acts and not a secret intent. Seaway Company, Inc. v. Attorney General of Texas, 375 S.W.2d 923 (C.C.A.), and authorities there cited, application for writ pending.

Appellee relies upon four alleged evidentiary facts to support an intention to retain title to the lines. First, it recites the provision in its contract with Pinewood Utilities providing that each party to the contract retains title to the lines that are laid and paid for by the respective parties. This was purely a reservation of title as between the parties to the contract so that neither would profit from ownership of a line paid for by the other party. If later differences arose between the parties, appellee would then be in a position to make other arrangements for services to those who lived in Lakewood Estates. Secondly, appellee says it paid the connection fee for the lot owners. This assertion is not supported by the record. While the fee was paid by checks of appellee, the record shows the fee was collected by it from the lot owners. This is reflected by Mr. Goldberg's testimony that the average price at which lots were sold was $800.00 plus the $150.00 utility charge. Thirdly, appellee asserts the payment to the State and County of ad valorem taxes on the lines. This assertion is not supported by the record. The record shows a tax statement issued by these taxing authorities. There is no evidence that the taxes were paid. Neither is there evidence that the statement was issued pursuant to any rendition made by appellee. The testimony merely shows an act of third parties and not one by appellee or its representatives. Appellee's secretary-treasurer was a witness whose testimony reflected close acquaintance with appellee's operations and he did not testify that the taxes as thus assessed were paid, nor did he testify to any rendition by appellee. He must have had this information available. Fourthly, appellee contends that the cost of the lines was set up on its books as a capital investment and depreciated for income tax purposes and this shows an intent to retain title as the Federal tax agents will not allow this unless title has been retained.

We do not know what the ruling of the tax authorities has been. Appellee's reasoning is that where title is retained you must capitalize the investment; therefore, the fact that the cost is capitalized is evidence of the intention to retain title. This seems an effort to lift one by his own bootstraps. Appellee in this connection cites the case of Colony, Inc. v. Commissioner of Internal Revenue, 26 Tax Court 30. That case merely held that where title is reserved the cost of a utility system in a subdivision must be capitalized. Under the facts of that case there had clearly been a retention of title and the developer was in fact operating a private utility and charging for the service.

As we above stated, the alleged evidentiary facts relied on by appellee amount to no more than a scintilla of evidence.

When all the evidence is considered, it affirmatively establishes an implied dedication. The subdivision was developed with the intent to sell lots on which homes could be built that would be eligible for F. H. A. financing. In order to be eligible water and sewer service was required. The plat of the subdivision was made and the streets and utility easements were dedicated to the public. The utility lines were not at this time installed. They were subsequently installed and purchasers of lots were told this service was available and Mr. Saks, the president, testified appellee was obligated to furnish purchasers this service. Then without any overt act reserving title to the lines, except as between appellee and Pinewood Utilities, appellee had the lines installed in the publicly dedicated easements, the water

lines in the street and the sewer lines in the utility easements. This latter fact would not standing alone be sufficient to establish dedication, but considered with the facts that appellee was installing the lines so as to make these services available to members of the public who should buy lots and build houses, as distinguished from merely servicing rent houses belonging to him, is·evidentiary of intent to dedicate. Too, appellee did not intend to operate a utility system as in the above case and these services would be necessary long after appellee might sell all of the lots. Recognizing the necessity for these services in order to get F. H. A. financing, appellee made the contract with Pinewood Utilities to make the services available to the members of the public who built homes in Lakewood Estates. We have noted the reservation of title as between the parties to that contract, but that contract also provided that "the rights and benefits accruing and the obligations incurred * * * shall extend to the successors and/or assigns of the parties to this contract." Appellee contemplated a successor to Pinewood Utilities and the obligation of such successor to service through these lines the general members of the public. This evidences an intent to dedicate the lines to the use of the members of the public living in Lakewood Estates.

The evidence further shows that appellee in determining the sales price of the lots considered all cost and expense including the cost of installing these lines, so that it, so far as the record shows, intended to be reimbursed for the lines. The fact that it may have figured too low a price and has not profited makes no difference. The fact it intended to obtain reimbursement from sale of lots to members of the public for whom the service was made available and not through operation of the system is evidence of dedication.

■ We are of the view that the case must be reversed because there is no evidence supporting the court's finding of market value. Where property is taken for public use the measure of damages is the market value of the property taken. The evidence here merely gave the reproduction cost less depreciation. While the court concluded the market value was $29,293.60, there is no evidence to show market value. The evidence does not show that generally such property is sold and purchased in the market on the basis of reproduction cost less depreciation. Nor is there evidence showing such property does not have a market value. The evidence merely shows appellant on some occasions on a basis of individual contract has paid for utility plants on this basis. This does not establish market value. United States v. Buhler et al., 305 F.2d 319 (5th Cir.). It may be on retrial appellee can establish this to be market value, or, it may be that it can establish there is no market value generally for this type of property and therefore there is some other measure of damages.

■ Though we have held that the only evidence of probative force shows an implied dedication, we feel from what we do see in the record there is a distinct possibility that on another trial there may be development of facts which will raise a fact issue as to retention of title. For instance, it may be shown that in fact appellee paid taxes on the lines separate and apart from taxes on the land and that it rendered the lines themselves for taxes. Too, it may be shown that the discussion about the likelihood of the addition being taken into the City related to the thought that the City would then buy the lines and this would shed light on the meaning of the reservation of title made in the contract with Pinewood Utilities. If such is shown, we think there would be evidence of probative force from which the trier of facts could reasonably conclude there was no dedication. Therefore, we are of the view that the case was not fully developed and should be reversed and remanded instead of reversed and rendered.

In the light of another trial and considering some of appellant's other conten-

tions, we feel we should make some observations on the City's authorities.

The facts here show appellee still owns some of the lots in the addition and, therefore, its implied power is not exhausted, as was the case of Moser v. Greenland Hills Realty Company, 300 S.W. 177 (C.C.A.), writ ref. However, even if it is beyond the charter power of a corporation to operate a utility system or to own lines used for such purpose, this does not mean the property can be appropriated for public use without compensation. This is only grounds for forfeiture of the charter or for the requirement that the property be disposed of. Houston Natural Gas Corporation v. Nueces County Water Improvement Dist. No. 1, 157 S.W.2d 170 (C.C.A.), no writ history.

The Moser case, supra, and the case of City of Beaumont v. Calder Place Corporation, 143 Tex. 244, 183 S.W.2d 713, were cases where from a fact standpoint the reservation of title to a sewer system that was voluntarily integrated, from the time of its initial construction, with the City system was contrary to public policy insofar as it prevented persons within the City but from outside the subdivision from using the facility, because it interfered with the City exercise of its police power. Despite some broader expressions in the Moser case, we think this is the construction of the holding given by the Supreme Court in the City of Beaumont case. Here we have no effort to deny persons outside the subdivision from utilizing the sewer lines.

In the cases of Hightower v. City of Tyler, 134 S.W.2d 404 (C.C.A.), writ ref., and City of Snyder v. Bass, 360 S.W.2d 426 (C.C.A.), ref., n. r. e., the City, at the request of the owners, at a time when the addition was outside of the city limits, began furnishing services through lines installed by the subdividers. After annexation the City continued to do exactly the same thing. There was therefore consent by the subdivider. We have no such situation. The City, prior to the purchase of the Pinewood

Utilities system, had no connection with the lines in Lakewood Estates. The City says on appeal, however, that it is just doing what Pinewood Utilities was doing by permission of appellee and the successors of Pinewood Utilities, under the contract, had a right to do. The City made no such contention in its pleading below. In its pleading and under the evidence the City did not assert consent by appellee. To the contrary, it by its pleading denied any ownership or right of control in appellee. It was asserting appellee had reserved no interest in the lines and as a matter of public policy could not do so.

The judgment of the trial court is reversed and the cause is remanded for trial.