697 P.2d 1125

**CITY OF SIERRA VISTA, a municipal corporation, Plaintiff/Appellee,**

v.

**COCHISE ENTERPRISES, INC., an Arizona corporation; Bella Vista Ranches, Inc., an Arizona corporation; Joseph Cracchiolo; and Andrea Cracchiolo, Defendants/Appellants.**

**No. 2 CA–CIV 4753.**

Court of Appeals of Arizona, Division 2.

Nov. 30, 1984.

Review Denied March 19, 1985.

Fauver & Till by Stuart L. Fauver, Sierra Vista, for plaintiff/appellee.

D'Antonio & D'Antonio, P.C. by Patricia A. Ihnat, Tucson, for defendants/appellants.

HOWARD, Judge.

On August 26, 1975, the appellee City of Sierra Vista, hereinafter referred to as the City, filed an action for a declaratory judgment against appellants, hereinafter referred to as Cochise. In this action the City sought a determination and declaration of the rights, duties and obligations of the parties under a City ordinance which relates to waste disposal and provides for the payment of certain fees to the City when connections are made to the sewer system.

Cochise answered the complaint and filed a counterclaim. In Count I of the counterclaim Cochise asked for declaratory relief, seeking an adjudication of the respective rights and duties of the parties contained in certain agreements made in 1964 and 1967 relative to waste water disposal. Cochise also counterclaimed in inverse eminent domain, contending that the City had appropriated its sewer mains, sewer lines, sewer connections and other property without just compensation.

The City subsequently filed a second lawsuit against Cochise seeking an adjudication of the parties' rights as to certain sewage effluent. The cases were consolidated for trial and at a pretrial conference Cochise elected to proceed only on its claim of inverse eminent domain. It was also stipulated by the parties that the agreements of 1964 and 1967 were void.

The case was tried to the court and after making extensive findings of fact and conclusions of law, the court awarded judgment in favor of Andrea Cracchiolo in the sum of $1,760 and in favor of Joseph Cracchiolo in the sum of $63.

Cochise contends that the trial court erred in (1) holding that it could not reserve to itself an easement for sewer lines; (2) improperly valuing compensation due to Cochise for the taking of other easements; (3) failing to award any amounts for the value of 60 acres in Section 32 taken by the City for the use as a sewage pond, and (4) failing to award severance damages. Cochise also contends for the first time on appeal that it is entitled to interest on the compensation and damages to be paid to it by the City as of the date of the initial taking.

The land involved here is in Townships 21 South Range 20 East and 21 South, Range 21 East of Cochise County. There are three sections of land immediately involved, Sections 35, 36 and 31. Section 36 is immediately east of Section 35 and Section 31 is immediately east of Section 36. In the late 1950s the City of Sierra Vista north of Fry Boulevard was located primarily in Sections 33 and 34, to the west of Section 35. Section 34 was served by a small sewage pond in the northwest corner of the section. As the area expanded, primarily due to the growth of Fort Huachuca, subdivisions were planned and developed east of Section 34. The need for the City to plan and develop larger sewage treatment facilities and a consolidated sewer system became apparent. On December 23, 1959, the City adopted Ordinance No. 26 for the control and administration of sewers. The ordinance prohibited private sewage systems except when a public sewer system was not available, and when available, property served by a private sewer system was required to connect to the public system. The ordinance further provided that no public sewer extension could be

made without the approval of the City and that in new subdivisions where public sewer extensions were authorized, they were to be constructed at the subdivider's expense. The effect of the ordinance was to make any sewer lines connecting with the city system city property.

Cochise owns property in Sections 35 and 31. The Bella Vista Subdivision is the westernmost of the three, located in the southwest corner of Section 35. The Buena Subdivision lies directly east of Bella Vista in the southeast corner of Section 35. The Montebello Subdivision is located farther east, outside the city limits in the southeast corner of Section 31. Between Sections 35 and 31 was an undeveloped area in Section 36 where such facilities as the high school, city park, city hall and community center are located.

Beginning in 1960 and as late as 1972, Cochise filed subdivision maps and plats for its Bella Vista, Buena Vista and Montebello subdivisions. The dedications to public use contained in all subdivision plats involved in this action reserved to the dedicator an easement in, on, upon, over, through and across all streets, alleys and easements designated in said plats for utility purposes, including but not limited to water, gas, electric and telephone lines.

When Cochise originally commenced plans to develop its property in 1964, none of Section 35 had available to it any type of central sewage treatment. While the City did maintain a small treatment plant, for the most part, sewage disposal was handled by individual septic tanks. By Resolution 122, adopted by the City on April 28, 1964, the City resolved to construct a sewer outfall line from a designated location near the center of Section 36 to the western boundary of Section 36 to be completed within 90 days after receiving written notice from Cochise that it would construct a connecting outfall line to Section 35.

On June 4, 1964, the City and Cochise entered into an agreement for the purpose of providing sewer facilities for the Bella Vista Subdivision in order to provide a carrier line to carry sewage across Section 35 from Section 34. It was agreed that Cochise would construct a 10-inch outfall line, to be known as the Buena Trunk, along a designated route to the Bella Vista Subdivision and to a temporary sewage pond until the lines had been joined to the proposed sewer line in Section 36; that Cochise would convey to the City an easement for the sewer outfall line; that the City would pay to Cochise the difference in costs between Cochise's original proposed eight-inch pipeline and the City's desired ten-inch outfall line, not to exceed $7,500; that when the City constructed the ten-inch pipeline across Section 36, Cochise would construct a ten-inch outfall line to meet the City's line in Section 36 the Bella Vista Trunk, and abandon its temporary ponds. The City agreed to pay the difference in costs between the eight-inch and ten-inch outfall lines to be constructed by Cochise in the easement agreed to be granted to the City in order to meet the line in Section 36. The City, by Resolution 123, authorized the execution of the agreement for the construction of a public sewer across Section 35. The agreement was fully performed by the parties and the City paid Cochise $7,500 for the Bella Vista trunk and $3,772.52 for the Buena trunk. The Bella Vista trunk, Buena trunk and Bella Vista laterals and Buena laterals were all located in streets, alleys and easements.

On April 24, 1967, the City and Cochise entered into another agreement whereby Cochise agreed to assign its grazing lease consisting of 60 acres in Section 32 to the City for the construction of sanitary ponds, together with the necessary easements for sewer lines for ingress and egress. Cochise also agreed to convey a 15-foot easement for sewer line purposes along the north section line of Section 35 from state highway 90 to the Bella Vista trunk, along the existing drainage way in the southwest corner of Section 35 and across Section 31 from the western boundary line of Section 31 eastward beyond Charleston Road. The City agreed that the sanitary ponds would be located no less than 1,000 feet from the eastern boundary of Section 36; that Co-

chise would have the right and privilege without charge to use any drainage from the ponds with necessary access, and that no sewer charges or connection charges for sewer services rendered to Cochise or to lots located in Section 35 would be imposed. The City also agreed to pay the difference between an eight-inch sewer line and a ten-inch sewer line in Section 35 to be installed by Cochise.

The record also contains sewer service agreements which land developers were required to obtain from the City. These sewer service agreements apply to all the subdivision sewer systems in this action. Under these agreements required by the Arizona State Health Department, the City stated that the sewer plans and specifications had been reviewed, that the City had given permission for the proposed sewer system to connect to and become a part of the City sewer system and that the City would inspect the proposed sewer system during construction and would maintain and operate the system upon its completion.

The record further shows that all lots and subdivisions involved in this action carry the cost of the sewer system of the subdivision in which said lots are situated and that such costs are recovered by the developer upon the sale of the lots.

THE "TAKING" OF THE PIPELINES

An expert for Cochise testified that the fair market value of the sewer lines in which the City asserted ownership in 1975 was $638,493.08 and that the rental value of the sewer lines prior to that time was $249,157.23. Cochise contends the trial court erred when it concluded that any attempts to reserve easements in the dedicated streets and alleys for sewer line purposes were void and against public policy. We do not agree.

After dedicating the streets and alleys to the use of the public the plats contained a reservation "... for utility purposes, *including but not limited to* water, gas, electric and telephone lines, an easement in perpetuity in, upon, over, through and across all streets, alleys and easements as dedicated on this plat." (Emphasis added)

The City argues that the reservation does not include sewer lines because there is no specific language relating to them. We assume, for the purposes of argument only, that the language would include an easement for sewer line purposes and for the sewer lines themselves.

In 1975 the legislature passed A.R.S. § 9–463.01(C)(6) which provides that the City shall require the dedication of public streets, sewer and utility easements or rights-of-way within the proposed subdivision. However, the plats here were filed prior to 1975 and at that time A.R.S. § 9–477 simply provided that upon the filing of the plat the fee to the streets and alleys vested in the public.

■ The general rule is that a dedicator may impose such restrictions and reservations as he may see fit when dedicating his property to the use of the public subject to the limitation that the restriction or reservation be neither repugnant to the dedication nor contrary to public policy. *Moser v. Greenland Hills Realty Co.*, 300 S.W. 177 (Tex.Civ.App.1927); *Ferguson Seed Farms, Inc. v. Ft. Worth & D.S.P. Ry. Co.*, 69 S.W.2d 223 (Tex.Civ.App.1934); 11 E. McQuillin, The Law of Municipal Corporations § 33–10 at 660 (3d ed. 1983).

■ As far as the subdivisions located within the City limits are concerned, Cochise was subject to the exclusive power of the City to determine who could operate a sewage system in its streets. A.R.S. § 9–276(A)(3) gives the City the power to build and repair sewers. Pursuant to A.R.S. § 9–276(A)(21) the City can establish and define sewer districts and construct sewers therein. The only way a private sewer system can operate in an incorporated City is under A.R.S. § 9–276(B) which states:

"A domestic corporation or association organized for the purpose of ... furnishing cities and the inhabitants with a sewer system, may, by consent of the governing body, erect ... sewer plants, and

lay down pipes in the streets, alleys, plazas and ways of a city, subject to such rules and regulations as the city shall by ordinance impose."

■■■ The construction, maintenance and repair of sewers may be provided by ordinances and sustained as a valid exercise of the police power in the interest of public health. *Longridge Estates v. City of Los Angeles*, 183 Cal.App.2d 533, 6 Cal. Rptr. 900 (1960), and an ordinance requiring property owners to make connections therewith is also a valid exercise of the police power. *Township of Bedford v. Bates*, 62 Mich.App. 715, 233 N.W.2d 706 (1975). The City can require those persons benefited by sewer lines to share in the cost of their construction.[1] Thus the City could have required the creation of a sewer district under A.R.S. § 9–276(2) and assessed Cochise for the cost of the sewer lines. However, the record here shows that Cochise did not want the City to create a sewer district. Therefore, the City could require Cochise to connect to the City sewer system at Cochise's own expense. Once connected to the City sewer system, complete control and ownership of the system rested with the City pursuant to City Ordinance No. 26. All of this leads to one conclusion. Any attempt by Cochise to reserve to itself the right to the sewer lines and any easement pertaining thereto was void as contrary and repugnant to Ordinance No. 26 and the public policy of the state giving incorporated cities exclusive control over its sewage system.

Cochise relies heavily on *City of Houston v. Lakewood Estates, Inc.*, 381 S.W.2d 697 (Tex.Civ.App.1964) to support its position. We find that case to be significantly different from the case sub judice. In *City of Houston*, the city annexed an area containing a private water and sewer system. Lakewood had hooked up to this system, contractually reserving ownership to itself of the pipes and appurtenances it had installed for the connection, including pipes

running through an adjacent subdivision. The appellate court reversed and remanded for new trial because there was no competent evidence of market value. It also noted that if the evidence on retrial showed that when Lakewood put its pipes in the public streets it did not intend to retain title to them, then there was an implied dedication of the pipes to the public. However, if the facts showed Lakewood intended to retain title, then it would be entitled to compensation.

Here, we do not have an annexation and takeover of an existing sewer and water system. We have an initial integration with the City system. There was no private sewer system; it was always public. Nor did the *City of Houston* case involve statutes and an ordinance such as we have here. Cochise's reliance on the *City of Houston* case is misplaced.

■■ At the time Montebello Estates, a subdivision located outside the city limits, was dedicated, Ordinance No. 158 was in existence. It authorized the construction of sewers under private contract at the cost of the applicant and further provided that when the sewers were hooked up with the sewer system and accepted by the City engineer that the title of the sewers was transferred to the City. When Cochise connected the Montebello sewage system to the City it did so subject to Ordinance No. 158 and cannot rely on any purported reservation of rights in its dedication to avoid the consequences of the ordinance. There was no evidence that Cochise would have or could have taken any other course. In order to sell the lots in Montebello Estates it needed the availability of FHA financing and FHA required a public sewage system. Cochise got FHA financing based on the fact that the city was providing the system. Furthermore, Cochise recovered the cost of the system in the sale of the lots. Having connected Montebello to the City sewage system, Cochise is bound by the ordinance and retained no property interest in the

---

**1.** The municipality also has the power to impose conditions on subdivision development, including the dedication of streets, alleys, drains, wa-

ter mains, sewer mains and the like. *Crownhill Homes, Inc. v. City of San Antonio*, 433 S.W.2d 448 (Tex.Civ.App.1968).

sewer lines constructed within avenues, streets, alleys and rights-of-way.

## THE LEASEHOLD INTEREST

Cochise had a ten-year grazing lease on 60 acres of state land which still had two years before expiration. The rights in this lease were assigned to the City for a sewage treatment facility pursuant to the 1967 agreement. Since the agreement was declared void, Cochise was entitled to recover the value of the leasehold interest. The trial court denied any recovery.

■■■■ The landowner has the burden of proof on the issue of damages. *Choisser v. State*, 12 Ariz.App. 259, 469 P.2d 493 (1970). Here, Cochise's valuation witnesses valued the 60 acres as if Cochise owned the fee. This was improper. The measure of damages for the taking of a leasehold interest is the fair market value of the leasehold. *State v. Chun*, 91 Ariz. 317, 372 P.2d 324 (1962). Since there was no competent evidence as to the market value of the leasehold interest, the trial court did not err.

## SEVERANCE DAMAGES

■■■■ Cochise contended in the trial court that the construction of the sewage pond on the 60 acres, approximately 600 feet from its Montebello Subdivision, entitled it to severance damages based on the alleged reduction on the value of the lots in the subdivision as a result of the construction of the pond. The City argues that the evidence did not show such unity of title and use between Cochise's leasehold estate and the subdivision as to entitle Cochise to an award of severance damages. See *Arizona State Land Department v. State ex rel. Herman*, 113 Ariz. 125, 547 P.2d 479 (1976). Assuming, arguendo, that such unity had been shown, the record does not demonstrate that the trial court erred in refusing to grant severance damages. There were testimony and exhibits offered on both sides of the issue. The trial court, as the trier of fact, viewed the premises and made a specific finding based on the testimony, exhibits and view that there was

no diminution in value of the land in the vicinity of the sewer ponds. Since there was evidence to support the conclusion of the trial court, we refuse to disturb it.

■■■■ Cochise claimed the trial court also erred in not awarding severance damages resulting from a taking of the easements granted to the City under the 1964 and 1967 agreements. Again, the testimony on this issue was in conflict. Where the evidence is in conflict at trial and determinations of fact turn on credibility, we shall not substitute our judgment for that of the trier of fact. See *Leone v. Precision Plumbing & Heating of Southern Arizona, Inc.*, 121 Ariz. 514, 591 P.2d 1002 (1979).

## QUANTUM MERUIT

Cochise contends that it is at least entitled to recover for the lines installed and the value of the use based on the theory of quantum meruit. We do not agree.

■■■■ We note that appellants never pled unjust enrichment nor did they try the case on that theory. The first time appellants mentioned quantum meruit was in their post-trial memorandum filed with the trial court. Even assuming, arguendo, that the theory were properly pleaded and tried, appellants could not base a recovery on it. Quantum meruit is an equitable doctrine based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby. *Swiftships, Inc. v. Burdin*, 338 So.2d 1193 (La.App.1976). Unjust enrichment occurs whenever a person has and retains money or benefits which in justice and equity belong to another. *L. & A. Drywall, Inc. v. Whitmore Const. Co., Inc.*, 608 P.2d 626 (Utah 1980). Recovery under the theory of unjust enrichment requires five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law. *A. & A. Metal Bldgs. v. I–S, Inc.*, 274 N.W.2d 183 (N.D.

1978). Here, there was no impoverishment since the hook-up to the City sewer system enhanced the value of its lots by making them eligible for financing and saleable. As to the absence of justification, the record shows a justification for the enrichment, to-wit, the exercise of the police power. In other words, there was no *unjust* enrichment since the City received what it had—a legal right to receive under the Arizona statutes, Ordinance No. 26 and subsequent ordinances.

## INTEREST

The trial court ordered that the date of the taking would be the date the City filed its lawsuit asserting an ownership in the property, August 26, 1975. However, it did not award Cochise interest from that date, probably because Cochise never raised the issue. It does so now for the first time and the City contends that Cochise has waived interest by failing to raise it below. We do not agree. The landowner in an inverse eminent domain case is entitled to interest from the date of the taking as part of the constitutional requirement of just compensation. *State ex rel. Herman v. Mestas*, 12 Ariz.App. 289, 469 P.2d 855 (1970). There is no need to present any proof other than to show the date of the taking. The interest should be routinely ordered as a matter of right, which should have been done here.

The judgment is modified by awarding appellees, Joseph Cracchiolo and Andrea Cracchiolo, interest at the rate of 10 per cent per annum from August 26, 1975, and the judgment, as modified, is affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.