TATE, Judge.
The plaintiff (the “district”) is a governmental sewerage district claiming exclusive jurisdiction and control of sewerage facilities within its territorial limits, and the exclusive right to operate them. The de *310 fendants (“Afeo”) are private corporations and an individual who operate a non-governmental sewerage system serving residential subdivisions within the district’s territory.
The plaintiff district appeals from the trial court’s denial of injunctive and other relief sought by it.
The district sues Afeo for injunctive and declaratory relief principally (1) to recognize the district’s allegedly exclusive right to sewerage control within its territory, and (2) to recognize its exclusive control over the sewerage installations and facilities used by Afeo because of their alleged dedication to the public.
These two demands present essentially the two chief issues of this litigation. While various other procedural and substantive contentions are raised by both parties, we have concluded that it is unnecessary to discuss or decide the subsidiary contentions in view of the determination we reach with regard to these two principal issues.
I. The district’s allegedly exclusive right to operate, maintain, or regulate sewerage facilities within its limits.
The plaintiff district was created in 1951 by resolution of the Rapides Parish Police Jury. It included territory adjacent to but outside of the municipal limits of the City of Alexandria.
The district is created and organized under the general statute presently set forth as LSA-R.S. 33:3881-3891, enacted pursuant to Article 14, Section 14(c), Louisiana Constitution of 1921. See Johnson v. Sewerage District No. 2, of Parish of Caddo, 239 La. 840, 120 So.2d 262, noted 21 La.L. Rev. 338, 343-344, for statutory history. In addition to the powers granted the district by this general act, other general statutes also granted powers to the district: to establish sewerage systems within the district by financing same by special assessments upon property within the district, LSA-R.S. 33 :3981 — 3987; to require property owners to connect on to district sewer lines, assessing the properties for the cost thereof, LSA-R.S. 33 ¡4401-4407; to issue bonds secured by the mortgage on the property or the pledge of the income of the district, LSA-R.S. 33:4221-4230; to issue revenue bonds to construct, acquire, or improve a revenue-producing sewerage utility, LSA-R.S. 33 :4251-4262; and to incur bonded indebtedness for the purpose of constructing and maintaining sewerage works, LSA-R.S. 39:471, 501, 556, 569, enacted pursuant to Article 14, Section 14(m), Louisiana Constitution.
The district contends, as stated in its brief (p. vi.), that by virtue of the cited constitutional and statutory provisions, the district “is the exclusive governmental authority of sewerage installations within the the district * * * operated for the benefit of the public, whether constructed by private individuals or directly by public authority, * * * to the exclusion of private individuals, and is entitled to permanent injunctive relief against individuals [such as Afeo] claiming the right to usurp these powers.” Further, pretermitting its right to injunctive relief, the district further contends by its brief (p. vi.), that it is entitled to relief by declaratory judgment “recognizing the district’s exclusive power and obligation to control, maintain, and regulate such sewerage facilities for the benefit of all the people of the area * * *.”
In .making this sweeping claim to exclusive sewerage powers within its boundaries, the plaintiff district relies solely upon the statutory and constitutional provisions above referred to. The district does not, however, refer to any specific constitutional or statutory provision conferring such exclusive powers upon it.
Nowhere in these cited constitutional or statutory provisions do we find any expressions which expressly or by implication confer or recognize such exclusive sewerage-control powers as the district claims.
For instance, LSA-R.S. 33:3885 sets, forth the “corporate status and powers” of' *311 •districts organized under LSA-R.S. 33 :- -3881-3891 as was the plaintiff. This provi-sion authorizes a sewerage district created under it to perform all acts “necessary and •proper for the purpose of constructing and maintaining sewers and sewerage disposal works within their territorial limits”, to “expropriate property”, for sewerage purposes, to "establish, maintain, and collect rates, charges, or connection charges for •any service rendered by the sewerage district to be paid by the owner [who] * * * is connected with and uses or is served by the sewerage system of the district”; etc. Again, the constitutional Article 14, Section 14(m), relied upon by the appellant district, simply grants power to the legislature to authorize political subdivisions to issue revenue bonds “[f]or the purpose of ■constructing, acquiring, extending, or improving any revenue producing public utility * * Likewise, the other constitutional and statutory provisions referred to simply authorize sewerage districts to construct, operate, maintain, or acquire sewerage systems, and provide the means by which such activities may be financed.
In summary, the constitutional and statutory provisions cited only authorize sewerage districts such as the plaintiff to acquire and operate sewerage systems within their district, and they provide the districts with the powers to do so. The provisions do not expressly or by implication provide that such a sewerage district has the exclusive right to operate such services within its boundaries. Nor do they at any place prohibit the operation of privately owned sewerage facilities within a sewerage area; although they do provide the powers by which privately owned facilities may be acquired or expropriated by the public district. Thus, we can find no legal basis in the enactments relied upon by it for the plaintiff district’s claim to exclusive control and jurisdiction of sewerage matters within the district’s boundaries.
The district does argue that its exclusive power and control of sewerage facilities is implied by virtue of the district’s governmental function to provide sewerage services. Cited in support of this contention is Town of Coushatta v. Valley Electric Member. Corp., La.App. 2 Cir., 139 So. 2d 822. In this case, a municipality with the sole statutory power to franchise utility services within its limits, was granted an injunction forbidding the extension of services within municipal limits by a utility which was not franchised by the town. However, the Coushatta decision is not applicable to the present situation, because, inter alia, the present sewerage district is nowhere statutorily given the exclusive power to franchise (control) utility services within its limits (as was the municipality in the cited case), so as to entitle it to enjoin the operation of services not franchised by it.
We conclude that the trial court correctly denied the plaintiff district’s claim to in-junctive and declaratory relief recognizing its claim to exclusive sewerage jurisdiction.
In so ruling, however, we expressly note that we do not have before us any question as to the right of the plaintiff sewerage district to levy service charges upon Afeo or upon those connected with Afco’s lines to the extent they are served by the district’s sewerage system or if otherwise authorized by law. We hold only that the above constitutional and statutory provisions relied upon by the district do not per se entitle it to judicial recognition of any exclusive jurisdiction over sewerage matters within its boundaries. We do not reach and we do not pass upon, for instance, any contention that the state Public Service Commission, under its constitutional regulatory powers, Article 6, Section 4, Louisiana Constitution, see also LSA-R.S. 45 :1203, may or may not have the power to regulate and control privately operated sewerage disposal facilities such as those maintained by Afeo, including the regulation of any interference by them with the function of the public sewerage districts to furnish adequate sewerage facilities to the localities served by them.
*312 II. The district’s claim to supervision and control of sewerage facilities used by the defendant Afeo because allegedly they were dedicated to the public.
The sewerage facilities operated and maintained by the defendant Afeo, including gravity sewerage mains, force (pumped) mains, and lift stations, are connected with and empty into a municipal sewerage system operated by the City of Alexandria, which adjoins the district. Afco’s sewerage system is not connected at any place with and does not empty into the sewerage systems operated by the plaintiff district, which are smaller in extent and serve a lesser area than does Afco’s sewerage system.
Afco’s system was acquired by original construction by it (or its predecessor corporations), and by purchase from other subdivision developers in the areas surrounding Alexandria. Although created in 1951, the plaintiff district was dormant until 1959. During this period and thereafter, Afeo constructed sewerage lines and facilities emptying into the municipal sewerage system (by arrangement with the city), in order to provide sewerage services for residential subdivisions in the area. During this time, and as other residential subdivisions were developed, the developers of each subdivision constructed lines to serve the building lots therein, which lines were then transferred to Afeo.
At the present time, Afeo itself makes no monthly charge for the sewerage services, which are financed by an initial connection fee (about $100) as the lots of the various subdivisions are sold.
In almost all of the subdivisions, the sewerage mains serving the lots are constructed across the lots themselves on an “easement for public utilities” (generally 10’ wide) reserved on the rear or side of each lot by the recorded plat of each of the subdivisions. The individual sales by the developers to the purchasers do not make specific reservation to the seller of these servitude rights. Some of Afco’s sewerage lines and facilities, although not the greatest part, are situated in the rights of way dedicated by the plats to the police jury for public street purposes.
Typically, these plats contain a notarized statement by the landowner-developer that by the plat he does “hereby dedicate and appropriate for public use as public streets'the streets shown on this plat * * See D-4- at Tr. 249. None of the plats contain a specific dedication of the utility easements to the public, but typically (as inD-4 referred to), the plats note by dotted line a servitude area across the rear of the lots, with a plat notation (such as in D-4) “10' utility easement.”
The defendant Afeo acquired by written assignments or sales the sewerage lines iix the various subdivisions, usually for a nominal sum; the developers selling to Afeo-were primarily interested in sewerage service for their subdivision in question, in order to provide a better market for their lots.
The plaintiff district does not base its claim to control and ownership of Afco’s. lines upon any written transfer of them to-the district.
’ The substance and sole basis of the plaintiff district’s claim to title is as set forth in the amended Paragraph 12 of its petition, Tr. 35, in which it contends: “Any sewer installations made by the defendants, within the boundaries of the plaintiff sewerage district lie in the public streets or other easements dedicated to the public or upon properties which have been sold by the defendants to various persons, and therefore, the defendants do not own any semblance of title of any kind to these facilities. Because of the foregoing, the defendants have, by operation of law, expressly or impliedly dedicated all of such facilities to the public, and therefore have no private property rights in said facilities.”
Both parties agree that the applicable legal principles are as set forth in the early Louisiana Supreme Court decision of *313 Saulet v. City of New Orleans, 10 La.Ann. SI, 82:
“According to the principles laid down in these cases, on which dedications to the public use have been supported without any grant or deed, it must either appear [a] that the ground has been used with the assent of the owner for public purposes which, in their nature, exclude the idea of private ownership, and for such a length of time, that the public accommodation and private rights would be seriously affected by the interruption of that use, or [b] the intention of the owners to appropriate the property to such public purposes must be made to appear unequivocally by some plan or writing, manifesting that intention, so as to render it a violation of good faith to the public and to those who have purchased property according to such plan, for the owner to revoke the dedication.”
See also Parish of Jefferson v. Doody, La., 174 So.2d 798, 801.
Under the facts of this case, in our opinion, neither Afeo, nor the subdivision developers subsequently transferring their lines to Afeo, can be held to have intended to dedicate to the public the sewerage lines in question, and to divest themselves of ownership of them, just because they laid these lines in servitudes reserved for public utility purposes, or in street areas of new subdivisions. For one thing, the laying of the lines in street and servitude areas did not, under the circumstances “exclude the idea of private ownership.” See 10 La.Ann. 82, above-quoted. Further, “An intent on the part of the owner to dedicate is absolutely essential”, 174 So.2d 801; and nowhere, by instrument or deed, did the private persons who constructed them exhibit any intent to divest themselves of ownership of the sewerage lines and facilities per se — to the contrary, by transactions between Afeo and the developers, as well as by Afco’s acts of ownership and control, at all times the parties concerned evidenced the intent that such sewerage facilities were to remain the private property of Afeo and its predecessors in title.
That is, the street rights of way and the “easements” (servitudes) themselves may indeed have been dedicated to the public expressly or by implication. But because these streets and servitude areas were dedicated for public purposes, does not mean that utility facilities located therein were necessarily likewise dedicated to the public.
The developers who created the subdivisions reserved in their plats a servitude (“easement”) for public utility running across the end of each lot. This, of course, was to benefit the lot by which affected, as well as the entire subdivision, by reserving in advance across each lot an area which would make possible the utility services needed by residential areas in modern times. • In these utility servitudes, for instance, were laid not only Afco’s sewer lines, but also the telephone cables of a private telephone corporation, as well as the electric and gas lines of municipal (Alexandria) utility services. Tr. 424, 436, 493.
The servitudes themselves may have been dedicated to the public; but we cannot hold that, under the present circumstances, such dedication of the servitude area carried with it a transfer to the public of title to privately-owned utility facilities within such servitudes: The developers who created the utility-servitudes, and also the private persons who constructed or purchased utility service facilities in them before and after the dedication of the servitude, both consistently treated such facilities, by contract and otherwise, as privately-owned. The use for the public of these facilities was not inconsistent with such private ownership. Under all these facts, there simply cannot be, in our opinion, the express or implied intent of the private owners to dedicate the present utility facilities to the public, as required by Louisiana law before we can hold that these private owners divested themselves of their title to their property by dedicating it to the public.
*314 The appellant district cites to us four non-Louisiana decisions which do indeed contain language somewhat favorable to its contention that construction of utility facilities in a -street dedicated to the public may divest the private owner of title to such facilities.[1] Although we believe that, under their differing facts and State law, the holdings in these cases may to a great extent be differentiated as inapplicable to the present circumstances,[2] we think it pointless to do so, since we are here concerned with applying Louisiana law, not the law of the foreign jurisdictions concerned. Furthermore, yet other non-Louisiana decisions can be cited, with expressions and holdings conflicting with those relied upon by district, decisions more consistent with the views herein expressed.[3]
Before completing our discussion of this issue, however, we should here note that our holding here is limited to our finding that the defendant private owners (“Afeo”) have retained title to their sewerage facilities maintained by them, as against the plaintiff district. We do not mean to hold, as this question is not before us, that Afco’s private control and ownership is unrestricted by obligations to the public re-suiting from the dedication of the sewerage facilities to the privately-managed use for a public purpose, in reliance upon which other private persons have acquired property and constructed improvements in the area. Cf., 11 McQuillin on Municipal Corporations (3d ed., 1964) Section 31.09 at p. 195; 64 C.J.S. Municipal Corporations, § 1806c, p. 277.
III. Conclusion.
For the reasons stated, we therefore conclude that the plaintiff district is not entitled to injunctive or declaratory relief as prayed for, recognizing its exclusive right to own, regulate, or operate sewerage facilities within its limits; nor to declaratory relief as prayed for, declaring that the sewerage installations and facilities claimed by the defendants (“Afeo”) have been dedicated to the public and are subject to the plaintiff district’s jurisdiction and control.
This ruling, we think, is sufficiently determinative of the respective rights of the parties to satisfy the plaintiff district’s further prayer for declaratory judgment declaring the respective rights and obligations of the parties and fixing the legal *315 relations between them as to the matters at issue in this suit
For the foregoing reasons, the judgment of the District Court is affirmed; the plaintiff is taxed with costs to the extent that as a public body it is liable for them.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. Incorporated Town of Pittsburg v. Cochrane, 195 Okl. 593, 159 P.2d 534 (1945); City of Beaumont v. Calder Place Corporation, 143 Tex. 244, 183 S.W.2d 713, 714 (1944) and Moser v. Greenleaf Realty Co., Tex.Civ.App., 300 S.W. 177 (1927); and Cornwall v. Garrison, 59 Idaho 287, 81 P.2d 1094 (1938).

. For instance: The City of Beaumont decision concerned a statutory provision giving that municipality the exclusive right to own and operate the utility facilities in the city limits, 183 S.W.2d 713; as noted above in our opinion, the present sewerage district enjoys no such exclusive power. Moser v. Greenland Hills concerned not only a similar infringement upon governmental police power (not applicable here), but an invalidation of the attempt to reserve sewerage control as beyond the private corporation’s charter powers. Cornwall v. Garrison concerned an unsuccessful attempt by a grantee from the builder of a sewer line in the public street to prevent another from using it.

.Many of the decisions, often conflicting with one another, on questions relating to private sewers are collected at 11 Mc-Quillin on Municipal Corporations (3d ed., 1964), Section 31.09 (p. 190) “Private sewers and drains.” Among the cases there cited which recognize that there may be private ownership of sewer systems laid in public streets in circumstances such as the present are: Gunn v. City of Versailles, Mo.App., 330 S.W. 2d 257 (1959) (very striking case); City of Albany v. James S. Rivers, Inc., 217 Ga. 674, 124 S.E.2d 388 (1962); Oak Cliff Sewerage Co. v. Marsalis, 30 Tex.Civ.App. 42, 69 S.W. 176 (1902). See 64 C.J.S. Municipal Corporations § 1806 at pp. 275-276: “It is sometimes, although not always, held that a private drain or sewer constructed by an individual in a public street is his private property, and that he has the right to the exclusive use of it * *