Beachcroft Properties, LLP, and Sherman Holland, Jr., appeal from a summary judgment in favor of the City of Alabaster ("the City"), BW MMC, LLC ("BW"), and Joseph E. McKay, in an action filed by Beachcroft and Holland seeking access to a sanitary sewer system. We affirm in part, reverse in part, and remand.
The operative facts are undisputed. This dispute involves two contiguous, platted subdivisions in the City, namely, (1) Lake Forest Fifth Sector and Lake Forest *Page 704 
Fifth Sector, First Addition (collectively "Lake Forest"), and (2) Forest Highlands. Lake Forest and Forest Highlands abut one another near the eastern end of Sweet Leaf Lane, which is platted in both subdivisions. Beachcroft and Holland are joint owners, or developers, of Forest Highlands. BW is the owner and developer of Lake Forest. McKay has acted at all relevant times as an agent of BW.
On August 28, 2001, McKay presented to the Planning and Zoning Board of the City ("the Board") a preliminary plat, laying out proposed lots and streets for development in an area to be known as Lake Forest. All lots in Lake Forest were to be served by a sanitary sewer system to be constructed by BW. The Board voted to approve the preliminary plat, and BW had a sewer system installed. In particular, a sewer line capable of serving both Lake Forest and Forest Highlands was installed along Sweet Leaf Lane.
At a meeting of the Board on April 23, 2002, a preliminary plat for the development of Forest Highlands was presented. During the discussion that followed, the City engineer pointed out that a significant issue to be resolved was the absence of a connection to an existing sanitary sewer system. The ensuing discussion centered on the possibility of connecting a sewer system to serve Forest Highlands to the sewer line in place under Sweet Leaf Lane at the proposed point Forest Highlands abuts Lake Forest. One of the Board members stated:
 "[I]t has been our policy and understanding that the sewer system belongs to the Developer until such a time as it is up, running, and operating; then the City assumes control of it and takes it over. The Developer pays the electrical bill, pays for the pumping station and takes care of the maintenance on the pumping station. It is our understanding at this time that the sewer system belongs to the Developer of Lake Forest and we don't feel that we have the authority to allow another development to connect onto that sewer. That is the issue that has to be resolved."
(Emphasis added.)
McKay, who was in attendance, stated that BW did not plan for the Lake Forest subdivision to connect with the Forest Highlands subdivision, and that there were no plans to make the sewer system serving Lake Forest available to the residents of Forest Highlands. One of the Board members suggested that the developers of Forest Highlands could, instead of connecting to the Lake Forest sewer system, "pump down Highway 17 . . . to the pump station on Highway 26, which the City owns." A spokesperson for the Forest Highlands developers responded that pumping to the station on Highway 26 was not a "realistic option," because, he stated, it would "cost a fortune to do and it [might] take two to three pump stations." McKay criticized the spokesperson's concerns over the feasibility of using the pump station on Highway 26, stating that pumping down to the Highway 26 pump station was "exactly what [BW] had to do." He "stated that [BW] had to install two pump stations [at] great expense in order to get sewer back to this point," and said that a connection to Lake Forest was not available to Forest Highlands. After further discussion, the Board voted to postpone approval of the preliminary plat for Forest Highlands.
At the June 26, 2002, meeting of the Board, McKay presented a proposed "final plat" for Lake Forest. Unlike the preliminary plat for Lake Forest, the final plat designated four of the eastern-most lots along Sweet Leaf Lane for "future development," effectively creating a "buffer zone" of undedicated real estate between *Page 705 
Lake Forest and the proposed Forest Highlands subdivision. The plat presented at the June 26 meeting also added the following notation:
 "LOT 599 AND THE PUMP STATION SHOWN THEREON AND ANY SANITARY SEWER LINES CONNECTED TO SUCH PUMP STATION WHICH ARE NOW OR HEREAFTER LOCATED IN, ON OR UNDER ANY OF THE EASEMENTS SHOWN ON THIS PLAT ARE SPECIFICALLY NOT DEDICATED TO THE PUBLIC OR ANY GOVERNMENT ENTITY BY THE FILING OR RECORDING OF THIS PLAT. SUCH A DEDICATION, IF ANY, SHALL BE ACCOMPLISHED BY THE RECORDING OF DEED TO BE FILED FOR RECORD IN THE PROBATE OFFICE OF SHELBY COUNTY, ALABAMA."
(Capitalization in original; emphasis added.)
A spokesperson for the developers of Forest Highlands objected to the reservation of the four lots as "possibly being a spite strip." During the ensuing discussion, a member of the Board remarked that McKay had "agreed to supply [the Board] with a Letter of Intent, stating that he [would] bring in the last 4 lots." Thereafter, the Board voted to approve the June 26 plat, "contingent upon the Final Plat not being signed until . . . the last four (4) lots" were presented. In July 2002, the Board approved the June 26 plat, and it was recorded in the Shelby County Probate Office.
On August 21, 2002, counsel for BW addressed a letter to counsel for the City, stating, in pertinent part:
 "With regard to any rights of adjoining landowners to connect to the sewer lines and pump station currently being installed in [Lake Forest], please be advised that such sewer lines and pump station are private facilities and specifically were not dedicated by the recording of the subdivision plat at Map Book 30, Page 25. . . .
". . . .
 "The sewer lines and pump stations are specifically noted on the plat or map as not donated or granted to the public. Accordingly, they remain private and are owned by the Developer [BW] until affirmatively dedicated by deed recorded in the Probate Office of Shelby County, Alabama.
 "Should any party seek to connect to these privately-held sewer facilities, the Developer will aggressively enforce its private-property rights."
(Emphasis in original.)
On November 1, 2002, Beachcroft and Holland sued the City, BW, and McKay. In their complaint they sought, among other things, a judgment declaring "that Sweet Leaf Lane, as well as the other public streets within [Lake Forest], have been statutorily dedicated to the public and that the sanitary sewer within said streets are public sewers available to plaintiffs connecting thereon and proceeding with the development of their properties." Beachcroft and Holland also sought an order enjoining the defendants from preventing Beachcroft and Holland from connecting "onto the sanitary sewer within Sweet Leaf Lane and the other public streets within [Lake Forest]." Additionally, they sought damages "for the loss . . . they . . . sustained by virtue of [the] failure and refusal to allow and permit [them] to connect onto the sanitary sewer within Sweet Leaf Lane."
At a meeting of the Board on December 30, 2002, McKay presented a plat dedicating the four lots that had been omitted from the June 26 plat. However, the December 30 plat also included verbatim the *Page 706 
notation from the June 26 plat, purporting to except from dedication the sanitary sewer lines constructed in Lake Forest. The minutes of the December 30 meeting contain the following relevant entries:
 "[Board member] Tommy Ryals stated that they have a letter from the City Attorney stating that we can approve this plat if we so choose subject to the Shelby County Circuit Court and [its] rulings and he would like to put this in [the] form of a motion.
 "After a brief discussion, a motion was made by Tommy Ryals and seconded by [Board member] Kenny Hill to approve the [platting of the] 4 lots [in Lake Forest] subject to the determination by the Shelby County Circuit Court as to the lawfulness of the reservation and restrictions regarding use of the sewer lines, as noted on the plat."
(Emphasis added.) The motion carried, and "Tommy Ryals stated that [the Board] would abide by whatever the court determine[d]." The December 30 plat was recorded in the Shelby County Probate Office. On January 28, 2003, the Board approved a preliminary plat for Forest Highlands, subject, also, to a judicial resolution of the City's authority over the sewer lines in Lake Forest.
On November 24, 2003, Beachcroft and Holland filed a motion for a partial summary judgment. On November 26, 2003, BW and McKay also moved for a summary judgment.[1] On April 2, 2004, the trial court entered a judgment in favor of all the defendants and denied the summary-judgment motion of Beachcroft and Holland. The judgment stated, in toto:
 "The cause came on before the court on cross motions for summary judgment filed by Plaintiffs and Defendants. The issue concerns a sanitary sewer hook-up and whether there was a dedication thereof to the City.
 "Plaintiffs filed a lawsuit against Defendants requesting from this court a preliminary and permanent injunction be issued against Defendants.
 "Plaintiffs, Defendants [BW] and Joseph McKay (hereinafter referred to collectively as McKay Defendants) are all in the business of real estate development. The McKay defendants have completed certain portions of real estate for residential properties which adjoin Plaintiff properties. Plaintiffs seek this court to allow them by way of injunction and/or declaratory judgment to connect onto a sanitary sewer within certain area in McKay Defendants' subdivision which Plaintiffs aver were dedicated to the City by McKay Defendants. McKay Defendants say by law said area has not been dedicated. Plaintiffs also seek damages against all defendants for the refusal to allow and permit Plaintiffs to connect onto the sanitary sewer within McKay Defendants' subdivision.
 "Summary judgment is hereby GRANTED in favor of all Defendants and DENIED as to Plaintiffs.
 "Based on the undisputed facts and the law, the McKay Defendants have lawfully withheld from dedicating the sanitary sewer mentioned in Plaintiffs' complaint as the Defendant City of Alabaster properly approved a reservation to allow McKay Defendants' withholding from public dedication a portion of the subdivision as permitted by Art. III, Section 3 [City of Alabaster Subdivision Regulations]; Ala. Code 1975, § 35-2-51(b); and the case of Cottage Hill Land Corporation v. City of Mobile, 443 So.2d 1201 (Ala. 1983). As a result of such reservation, McKay Defendants remain *Page 707 
responsible for all maintenance, costs and risks associated with the sewer in their subdivision until so dedicated to the City. As the law provides for such reservation, Plaintiffs' claims for any and all relief in their complaint fails.
 "Furthermore, as to the individual Joseph E. McKay, Plaintiffs have shown no legal basis to hold Mr. McKay in this lawsuit. By way of Mr. McKay's undisputed affidavit, he was an agent and any of his actions subject to this suit were as agent. Also, at no time did Mr. McKay have a direct ownership in the land and development in question."
(Emphasis added.)
Beachcroft and Holland appealed, challenging the trial court's conclusions (1) that BW "lawfully withheld from dedicating the sanitary sewer" beneath Sweet Leaf Lane and (2) that the City "properly approved [such] a reservation." More specifically, they contend that "the trial court erred in finding that the City approved [BW's] reservation when it approved [BW's] final plat." Brief of Beachcroft and Holland, at 21. They insist that "[t]o the extent that the trial court based its ruling on the nonexistent `approval,' it is due to be reversed." Id. at 22. Moreover, they argue that the purported reservation was a "legal nullity" under the "land use statutes . . . governing the dedication and conveyance of streets and sewers for a public use in fee simple to the governing body," id. at 31, and that they are entitled to a summary judgment "grant[ing] the necessary approvals . . . and reserving for a later date the trial of damages caused by McKay." Id. at 32.
The City has filed no brief in this appeal. However, it is abundantly clear from the minutes of the meetings of the Board that the Board believed it was constrained by a "policy andunderstanding that the sewer system belongs to the Developer until such a time as it is up, running, and operating," and that it had no "authority to allow another development to connectonto that sewer." (Emphasis added.)
BW and McKay contend that "by its approval of Lake Forest Fifth Sector's Final Plat, the [City] approved [BW's] retention of the sewer [lines]." Brief of BW and McKay, at 25 (emphasis added). They insist that the City's approval of the plat and BW's retention of the sewer lines was proper and that summary judgment was appropriate.
A party is entitled to a summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. "Our review of a summary judgment is de novo."Crutcher v. Wendy's of North Alabama, Inc., 857 So.2d 82, 85
(Ala. 2003). We first address Beachcroft and Holland's argument that they are entitled to damages.
 I. Damages
The claims for damages asserted by Beachcroft and Holland are based solely on the theory that BW and McKay tortiously interfered with a business relationship between the City and Beachcroft and Holland, as evidenced by the August 21, 2002, letter from BW's counsel to the City's counsel.[2]
It is fundamental that in order to establish a claim of tortious interference with a contractual or business relationship, the plaintiff must first demonstrate the *Page 708 existence of a contract or a business relationship between the plaintiff and a third party. Waddell Reed, Inc. v. UnitedInvestors Life Ins. Co., 875 So.2d 1143, 1153 (Ala. 2003). BW and McKay argue:
 "Although [Beachcroft and Holland] now have provided general authority regarding the elements of the tort . . ., they have cited no authority for the proposition that such a doctrine could possibly apply to its relationship with a public body such as the [City]. Indeed, the idea that a developer such as [BW] risks liability for an intentional tort for merely expressing its legal position to the [Board], the public body possessing the legislatively delegated authority over subdivisions in Alabaster, is indefensible on its face. Not surprisingly, no cases were found suggesting such an application of the doctrine."
Brief of BW and McKay, at 28 (emphasis added). BW and McKay thus directly challenge the applicability of the tort to the relationship at issue, and correctly point out that Beachcroft and Holland have cited no legal authority in support of that element of the tortious-interference claim.
Rule 28(a)(10), Ala. R.App. P., requires the appellant to cite relevant authority in support of its arguments. This is so, because "`it is neither our duty nor function to perform all the legal research for an appellant.'" Henderson v. Alabama A MUniv., 483 So.2d 392, 392 (Ala. 1986) (quoting Gibson v. Nix,460 So.2d 1346, 1347 (Ala.Civ.App. 1984)). "Nor is it the function of the appellate courts to `make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'" PileriIndus., Inc. v. Consolidated Indus., Inc., 740 So.2d 1108, 1110
(Ala.Civ.App. 1999) (quoting Dykes v. Lane Trucking, Inc.,652 So.2d 248, 251 (Ala. 1994)). Authority supporting only "general propositions of law" does not constitute a sufficient argument for reversal. Geisenhoff v. Geisenhoff, 693 So.2d 489, 491
(Ala.Civ.App. 1997).
For these reasons, we do not address Beachcroft and Holland's claims of tortious interference. To the extent the summary judgment disposed of those claims, that judgment is affirmed. The issue of the City's approval of the purported reservation of the sewer lines, however, is another matter.
 II. Approval of the Reservation
"A `statutory dedication' is made by strictly following the steps set out in [Ala. Code 1975, §§ 35-2-50 to -52]." Ritcheyv. Dalgo, 514 So.2d 808, 810 (Ala. 1987). Section 35-2-50
provides, in pertinent part:
 "Any person . . . desiring to subdivide his lands into lots shall cause the same to be surveyed by a competent surveyor . . . and shall cause a plat or map thereof to be made, showing the subdivisions into which it is proposed to divide the same, giving the length and bearings of the boundaries of each lot and its number; and, if it is the purpose of the owner to divide the lands into town lots, such plat or map shall show the streets, alleys and public grounds and give the bearings, length, width and name of each street, as well as the number of each lot and block."
Section 35-2-51(b) provides:
 "The acknowledgment and recording of such plat or map shall be held to be a conveyance in fee simple of such portion of the premises platted as are marked or noted on such plat or map as donated or granted to the public, and the premises intended for any street, alleyway, common or other public use, as shown in such plat or map, shall be held in trust *Page 709 
for the uses and purposes intended or set forth in such plat or map."
In this context, "`[t]he word "street" means ". . . the whole surface. . . . It comprises a depth which enables the original authority to do that which is done in every street, namely, . . . to lay down sewers, for at the present day there can be nostreet in a town without sewers. . . ."'" Shelby ContractingCo. v. Pizitz, 285 Ala. 301, 308, 231 So.2d 743, 748-49 (1970) (emphasis added) (quoting Cloverdale Homes v. Town ofCloverdale, 182 Ala. 419, 435, 62 So. 712, 717 (1913), overruled on other grounds, City of Orange Beach v. Benjamin,821 So.2d 193 (Ala. 2001)).
All parties rely on Oliver v. Water Works Sanitary SewerBd., 261 Ala. 234, 73 So.2d 552 (1954). That case involved a residential subdivision developed in the City of Montgomery "by private owners who buil[t] and dedicat[ed the] streets, and in those streets [laid] a system of sanitary sewers."261 Ala. at 236, 73 So.2d at 553. "The contention [was] that those sewersbelong[ed] to such [developers] who [could] confer on the purchasers of residential lots the right freely and without charge to use the sewer system constructed by the [developers]."261 Ala. at 236, 73 So.2d at 553 (emphasis added). In other words, the question was whether the unqualified dedication of the streets included a transfer of ownership and control of the sanitary-sewer system, authorizing the City of Montgomery, through its Water Works and Sanitary Sewer Board, to charge the residents of the subdivision for using the system.
In holding that the developers did not retain ownership and control, this Court explained:
 "[A]n acceptance of such streets offered for dedication would impose on the city the duty to use due care to keep the sanitary sewers in usable condition so as not to permit an unsafe condition to result. . . . The city could not be held responsible for the exercise of a power it had no right to render. . . . The [developers] may pave their proposed streets at their own expense; but when the city accepts a dedication the [developers] lose control. . . .
 "From this it follows that when the city accepts the dedication of a street, then paved and having storm and sanitary sewers, it has complete control of those facilities. It is immaterial whether we would say that title of the physical properties thereby vested in the city, for certainly the complete control of them so vested. Ownership of the physical properties without the power to control its use would be immaterial."
261 Ala. at 237, 73 So.2d at 554.
The dedication discussed in Oliver involved no express attempt to exempt the sewer lines from the dedication of the streets, as is the case here. Although Oliver is not directly on point, it at least makes clear that an unrestricted
dedication of streets necessarily includes a dedication of the sewer lines beneath the streets.
Beachcroft and Holland contend that BW, in attempting to dedicate the streets of its subdivision, while retaining ownership of the sewer lines beneath those streets, "is in effect [arguing] that a developer has the right to control access to a public sanitary sewer." Beachcroft and Holland's reply brief, at 5. We agree that this is the issue as the City understands it. In fact, Beachcroft and Holland argue that the City not only didnot, but could not, approve the reservation, while BW and McKay insist that the City both could and did approve it. Thus, the dispositive question in this case is whether a real-estate developer, in platting a subdivision for approval *Page 710 
by a municipal planning board, may impose on the municipality an express reservation prohibiting the municipality from asserting control over the sewer lines beneath the platted streets or from effecting a sanitary-sewer connection between two adjoining subdivisions.
In finding that the City had, in fact, approved the reservation, the trial court failed to address the dispositiveissue in this case. Moreover, that finding is legally insufficient. It is abundantly clear from the minutes of the meetings of the Board that the City consistently questioned the "lawfulness of the reservation and restrictions regarding use of the sewer lines" and expressly conditioned its approval of the December 30 plat map on a judicial determination of that issue. Indeed, for all that appears of record, the City would havedisapproved the reservation and would have allowed Beachcroft and Holland to make the sewer connection they seek had it not believed that it had no authority "to allow [Forest Highland] to connect onto [the Lake Forest] sewer." Thus, the City has not
"properly approved [the] reservation," as the trial court found.
Because the summary judgment failed to give effect to the condition attached to the City's approval, it failed to resolve the issue at the heart of this dispute, that is, whether the City had the authority to disapprove the "final" plats submitted on June 26, 2002, and December 30, 2002, containing the sewer-line restrictions or to effect a sewer-line connection between Lake Forest and Forest Highlands. Thus, it is premature for this Court to consider, for the first time on appeal, the authority of the City in this matter or to decide whether Beachcroft and Holland are entitled to the remedy they seek. Depending upon the trial court's resolution of the issues concerning the City's authority, the City may decide to allow Beachcroft and Holland to "connect onto the sanitary sewer within Sweet Leaf Lane and other public streets within [Lake Forest]."
To the extent the summary judgment failed to address the dispositive issue, that judgment is reversed, and the cause is remanded for further proceedings as to the issue of the extent of the City's authority.
 III. Summary
In summary, the summary judgment is affirmed to the extent it disposed of the claims of Beachcroft and Holland seeking damages based on a tortious interference with a contract or business relationship. However, to the extent it held that the City had approved the purported reservation by BW of ownership and control of the sewer lines under the streets of Lake Forest, the judgment is reversed, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and HOUSTON, LYONS, and JOHNSTONE, JJ., concur.
[1] The City did not move for a summary judgment.
[2] Beachcroft and Holland asserted no such theory in their complaint or in an amendment to the complaint. The theory was asserted for the first time in a "Brief in Support of Damages" filed by Beachcroft and Holland on January 30, 2004. They have reasserted the theory in this Court, but only in their principal brief.