Beachcroft Properties, LLP, and Sherman Holland, Jr. (hereinafter referred to collectively as "Beachcroft"), appeal from a summary judgment for BW MMC, LLC ("BW"), and the City of Alabaster ("the City") in an action filed by Beachcroft seeking access to a sanitary sewer system. We reverse and remand with directions.
This is the second time this dispute has come before us. The underlying facts are fully set forth in BeachcroftProperties, LLP v. City of Alabaster, 901 So.2d 703
(Ala. 2004), and will not be repeated. In Beachcroft, we reversed a summary judgment for BW and the City and remanded the case for the trial court to consider whether the City had the authority to reject BW's purported reservation of ownership and control of the sanitary sewerage substation on lot 599, as noted on the Lake Forest Fifth Sector subdivision plat ("Lake Forest"), and the sewer lines beneath the streets of Lake Forest, while, at the same time, accepting BW's dedication of Lake Forest.[1]
On remand, Beachcroft and BW again filed cross-motions for a summary judgment.[2] Submitted with BW's motion was the affidavit of its "agent," Joseph McKay, which chronicled the development of Lake Forest. The affidavit stated, in pertinent part:
 "6. I am familiar with the location of the proposed subdivision known as Froest *Page 901 
Highlands,[3] and I am aware that [Beachcroft] in this matter could gain access for Forest Highlands' sewer to the City of Alabaster's (the `City') sewer system by extending a sewer line along Burnt Pine Drive, a public road which accesses Forest Highlands, and then extending the line along Shelby County Highway 17 south to the intersection of Shelby County Highway 26 (Kent Dairy Road). The line would then be extended along Highway 26 to the City's existing sanitary sewer pump station. This access would utilize public right-of-way from [Beachcroft's] property all of the way to the City's pump station. Also, this routing of sanitary sewer lines would cover a similar distance and reach the same City pump station as the sewer lines serving [Lake Forest].
 "7. In the course of developing the various stages of the Lake Forest Development, [BW] . . . has built two sanitary sewer pump stations in the Lake Forest Development. The first station
was built in conjunction with the Lake Forest Second Sector (the `Second Sector') and was located on Lot 233 of the Second Sector.
 "8. [BW] was required by the City to maintain the subdivision pump station and the associated sanitary sewer lines for the Second Sector for approximately one year from the date of recordation of the final plat and pay any costs associated with the Second Sector's sewer system. In fact, after approximately one year from recording had passed, the City transferred the power bill into its name. Subsequent to that, [BW] deeded Lot 233, which contained the sanitary sewer pump station to the City.
 "9. Based upon my dealings with the City, it is my understanding that it is the City's general practice to require subdivision developers, for a period typically around a year, to retain their subdivisions' sanitary sewer systems maintaining full responsibility for the upkeep and paying all costs associated with the systems, in a similar manner as occurred in the Second Sector. This generally continues until a developer puts a final one-inch wearing surface of asphalt on the roads and conveys or otherwise turns over the pump station to the City.
 "10. [BW's] second pump station for the Lake Forest Development was built in Lake Forest Fifth Sector (the `Fifth Sector') and located on Lot 599. This station was designed to collect the sewer [sic] from a majority of the Fifth Sector and pump it into the pump station located on Lot 233. The pump station and sewer lines for the Fifth Sector were designed and built with a capacity to adequately service the Fifth Sector. For this pump station and the sanitary sewer lines connected to it, [BW] noted of the Fifth Sector's Final Plat that it was withholding those facilities from dedication. . . . [BW] continues to own and maintain Lot 599, and it also continues to pay the power bill for this pump station."
(Emphasis added.) This account was essentially reproduced in the "summary of undisputed facts" portion of BWs motion for a summary judgment and in BWs brief on appeal.
In its renewed motion for a summary judgment, Beachcroft argued, in pertinent part:
 "A developer . . . cannot . . . determine what members of the public shall have *Page 902 
access to public improvements to the exclusion of a municipality.
 "BW has frustrated the City's harmonious development plan and has caused damage to [Beachcroft]. BW's attempted restriction of the use of a public sewer . . . is . . . a legal nullity because it violates public policy. . . ."
(Emphasis added.) Beachcroft also argued that the City, in "acceding to BW's threats to exercise legal remedies against it should it allow [Beachcroft] access to the public sewer system," had "acted arbitrarily and capriciously." Beachcroft sought an order "allowing [it] to connect to the public sewers" under Lake Forest.
The trial court granted BW's motion and denied Beachcroft's motion. In so doing, the trial court disposed of all claims against BW and the City.
Beachcroft appealed a second time, and, for the first time in this dispute, the City filed a brief. The City agrees with Beachcroft, except as to Beachcroft's contention that it acted arbitrarily or capriciously. They both contend that the sewer system at issue is a public system. In particular, Beachcroft states: "[T]he evidence is undisputed that the streets and sewers are admittedly public and are connected to the City's system. They are being used by the public and the City is charging fees for such public use." Beachcroft's brief, at 22-23. Beachcroft and the City both take the position that the restrictions in the "`final' plats [BW] submitted on June 26, 2002, and December 30, 2002,"Beachcroft Props., 901 So.2d at 710, which purport to prohibit landowners in Forest Highlands, an adjoining subdivision, from connecting to the sewer lines beneath the streets of Lake Forest, are void as an invalid interference with the City's control over its own sewer system.
BW, on the other hand, disputes the allegations that the Lake Forest sewer system is a public system. It contends that BW owns the sewer lines and the pumping station on lot 599 and will do so until it deeds the system to the City. BW states that "case law supports the placement of `reasonable' conditions in public dedications," BWs brief, at 17, and argues that its purported restrictions are "reasonable."
The parties cite no Alabama case on point. Nevertheless, a few relevant rules are widely recognized. For example, "[i]t is well established that although one dedicating land for public use may impose reasonable conditions, restrictions and limitations thereon, he may not impose reservations repugnant to thegrant or which contravene public policy."Callahan v. Ganneston Park Dev. Corp., 245 A.2d 274,278 (Me. 1968) (emphasis added). See also City of Birminghamv. Graham, 202 Ala. 202, 204, 79 So. 574, 576 (1918) ("`A condition or limitation which would render the dedication ineffectual cannot be annexed. . . .'"); City of SierraVista v. Cochise Enters., Inc., 144 Ariz. 375, 379,697 P.2d 1125, 1129 (Ct.App. 1984) ("The general rule is that a dedicator may impose such restrictions and reservations as he may see fit when dedicating his property to the use of the public subject to the limitation that the restriction or reservation be neither repugnant to the dedication nor contrary to public policy."); Haven Homes, Inc. v. RaritanTownship, 19 N.J. 239, 246-47, 116 A.2d 25, 29 (1955) ("And it goes without saying that a reservation basically repugnant to the grant itself or to public policy cannot be sustained."); and 11A Eugene McQuillin, Law of Municipal Corporations
§ 33.10.20 at 342 (3d ed. rev.vol. 2000) ("The dedicator cannot attach a condition or reservation that will destroy the chief characteristic of the purpose of the dedication or take the property from the *Page 903 
control of, or impose burdens on, the duly authorized public officers.").
For example, there can be no "Valid dedication to a partonly of the public, since this would be repugnant to the purpose of the dedication.'" Greil v. Stollenwerck,201 Ala. 303, 306, 78 So. 79, 82 (1918) (quoting 1 Elliott,Roads Streets § 163); see also Hill v.Towson Realty, Inc., 221 Md. 389, 396, 157 A.2d 796, 799
(1960); Atlantic Beach Prop. Owners' Ass'n v. Town ofHempstead, 3 N.Y.2d 434, 144 N.E.2d 409, 165 N.Y.S.2d 737
(1957); and McQuillin, supra, § 33.10.20, at 344.
Indeed, "[t]he donee cannot . . . assent to conditions which will deprive the municipality of its power to regulate and control the public streets." North Spokane Irrigation Dist.No. 8 v. County of Spokane, 86 Wash.2d 599, 602,547 P.2d 859, 862 (1976) (emphasis added); see also State ex rel.Attorney General v. Louisville N.R.R., 158 Ala. 208,48 So. 391 (1908) (City of Montgomery could not, by contract, authorize the permanent obstruction of its streets by a railway company); and City of Camdenton v. Sho-Me Power Corp.,361 Mo. 790, 797, 237 S.W.2d 94, 98 (1951) ("The general rule is that a dedicator cannot attach conditions . . . which exclude public control of the property. . . .").
Moreover, "[i]f an invalid condition is annexed to the dedication, it [is generally] held that the condition onlyis void, and that the grant or dedication is not affected thereby." 3 John F. Dillon, Commentaries on the Law ofMunicipal Corporations § 1075, at 1698 (1911). SeeAbbot Kinney Co. v. City of Los Angeles,223 Cal.App.2d 668, 675, 36 Cal.Rptr. 113, 118 (1964); Callahan,245 A.2d at 278; Hooker v. City of Grosse Pointe,328 Mich. 621, 630, 44 N.W.2d 134, 139 (1950); Kuehn v. Village ofMahtomedi, 207 Minn. 518, 524, 292 N.W. 187, 190 (1940) (conditions for limitations purporting to "take the property dedicated from the control of the public authorities . . . will be construed as void," leaving the dedication in effect);Burns v. Board of Supervisors of Stafford County, 226 Va. 506, 515, 312 S.E.2d 731, 736 (1984) ("If the reservation is void, the dedication is effective but the reservation is inoperative."); and 26 C.J.S. Dedication § 33 (2001) ("If an improper condition is attached, the dedication will take effect regardless of the condition, which is construed as void.").
Perhaps more to the point is City of Sierra Vista v.Cochise Enterprises, Inc., supra, on which Beachcroft and the City rely. In Sierra Vista, Cochise Enterprises, Inc. ("Cochise"), filed platted subdivisions, purporting to reserve an easement for a sanitary sewer system "`over, through and across all streets, alleys and easements,'"144 Ariz, at 379, 697 P.2d at 1129; the system was connected to the sewer system of the City of Sierra Vista. 144 Ariz, at 380,697 P.2d at 1130. The City of Sierra Vista sued Cochise to determine the rights and duties of the parties "relat[ing] to waste disposal" and the "payment of certain fees to the City when connections [were] made to the sewer system." 144 Ariz, at 377,697 P.2d at 1127. At the relevant times, there was in effect ordinance no. 26, which effectively made "any sewer lines connecting with the city system city property." 144 Ariz, at 378, 697 P.2d at 1128. The trial court held that "`any attempts to reserve easement in the dedicated streets and alleys for sewer line purposes were void and against public policy.'" 144 Ariz, at 379,697 P.2d at 1129.
The appellate court agreed with the trial court, stating:
 "Once connected to the City sewer system, complete control and ownership of the system rested with the City pursuant to City Ordinance No. 26. All of this *Page 904 
leads to one conclusion. Any attempt by Cochise to reserve to itself the right to the sewer lines and any easement pertaining thereto was void as contrary and repugnant to Ordinance No. 26 and the public policy of the state giving incorporated cities exclusive control over its sewage system. . . .
 "Here, we do not have an annexation and takeover of an existing sewer and water system. We have an initial integration with the City system. There was no private sewer system; it was always public."
144 Ariz, at 380, 697 P.2d at 1130 (emphasis added).
According to BW, Sierra Vista is inapposite, because, it argues, that opinion was based on various pieces of Arizona legislation, and because there is no Alabama law holding that cities have "`the exclusive right to maintain a sewersystem.'" BW's brief, at 23-24 (some emphasis added) (quoting Jefferson County Comm'n v. ECO Pres. Servs.,LLC, 788 So.2d 121 (Ala. 2000)). BWs argument misses the mark in a number of respects.
First, although Sierra Vista did involve Arizona statutes and ordinances, those provisions, for the most part, did little more than codify the obvious and unremarkable proposition that cities own and control their own sewer systems. Alabama law is not dissimilar.
For example, as a matter of Alabama constitutional law, "[n]o . . . corporation shall be . . . permitted to use the streets . . . of any city . . . for the construction or operation of any public utility or private enterprise, without . . . the consent of the . . . city." Ala. Const. 1901, § 220. "The legislature has given the City the authority to regulate the developmentof subdivisions through its planning commission. §11-52-31, Ala. Code 1975. `Subdivision legislation is part of planning legislation, as is zoning; they are all predicated on the police power of the state.' City of Mobile v.Waldon, 429 So.2d 945, 947 (Ala. 1983)." City of Dothanv. Eighty-Four West, Inc., 822 So.2d 1227, 1236
(Ala.Civ.App. 2001) (emphasis added).
"A sewerage system may be constructed and maintained by a municipality . . . and when constructed is the property of the municipality, and the general public of the state at large has no interest therein." Benson v. City of Andalusia,240 Ala. 99, 101-02, 195 So. 443, 445 (1940). Moreover, "[t]heright of a municipality to regulate and control, under itspolice powers, the use of its sewer system is a necessaryincident to its ownership. . . ." 240 Ala. at 102,195 So. at 445 (emphasis added).
The right of control is also a necessary corollary of a municipality's "duty to use due care to keep the sanitary sewers in usable condition so as not to permit an unsafe condition to result." Oliver v. Water Works Sanitary Sewer
Bd., 261 Ala. 234, 237, 73 So.2d 552, 554 (1954) ("The city could not be held responsible for the exercise of a power it had no right to render."). See also Long v. JeffersonCounty, 623 So.2d 1130, 1135 (Ala. 1993) ("cities . . . are generally responsible for damage caused by the negligent operation and maintenance of sewers and drains under their control").
Second, the relevant question is not whether a municipality has "the exclusive right to maintain a sewer system," but whether it has the exclusive right to maintain and control itsown, sewer system. That is the question involved inSierra Vista, as well as in this case. In that connection, the City states:
 "The fact of the matter in [this] case is that the Alabaster sewer system is *Page 905 public. The sewage is routed and disposed of by the City's treatment facilities and plant. BW has attempted to reserve the lines and pumping station, but has no capability or infrastructure to handle the sewage. [BW] has no [Department of Environmental Management] permit. The sewage from the lots sold by BW simply flows into the City's sewage disposal system, the City charges the lot owners for the hookup and disposal of services, and BW has been able to sell lots with the attraction and availability of the City sewer system."
The City's brief, at 19 (emphasis added).
BW filed a motion to strike this portion of the City's brief, arguing that neither the City nor Beachcroft presented evidence in the trial court to support these factual assertions. In response, the City states that it has "always contended that its sanitary sewer system is public," and points out that "BW does not deny the accuracy of [the assertions] that BW has no [Department of Environmental Management] permit, no sewage treatment facility, [and] no capability or infrastructure to handle the sewage." (Emphasis added.) Moreover, the City contends that its factual allegations are, in fact, necessarily deduced from facts that are properly in evidence. We agree. Consequently, BWs motion to strike the City's factual assertions in its brief to this Court is denied. In its motion to strike, however, BW also correctly pointed out that certain arguments in the briefs of the City and Beachcroft are based on statutes and City ordinances cited only in the briefs and were never made in the trial court. BW moved to strike those arguments. To that extent, BWs motion is granted.
The City's factual allegations are amply supported by McKay's affidavit, as summarized in BWs narrative statement of undisputed facts and reasserted by BW in its brief onappeal. McKay admitted in paragraphs 6, 8, and 10 of his affidavit that Lake Forest is connected to the City's sewer system. Specifically, he stated that sewage from Lake Forest flows to the pump station on lot 599, the ownership of which is disputed in this case. From there, however, it flows to the pump station on lot 233, which, he stated in paragraph 8, BW hasdeeded to the City. McKay further explained how the City has required BW to build pump stations and to install and maintain sewer lines to service Lake Forest throughout each of its several stages of development. The City duly assumes control and maintenance of the facilities at the conclusion of each stage.
Thus, it is undisputed that the sewage from Lake Forest flows to facilities owned and operated by the City, and it is uncontroverted that BW does not purport to own or treat the sewage discharged by Lake Forest. In other words, when the Lake Forest sewer system was connected to the City's system, the City acquired the effluent, and the concomitant duty to dispose properly of the sewage flowing from Lake Forest to other points within the City's system.
It must be, therefore, that the pipes under Lake Forest and the pump station on lot 599 have become an integral part of thepublic sewer system with the right of control consequently vested in the City.[4] Were it otherwise, the developer of one subdivision could hold another development hostage on a whim, thereby improperly interfering with the orderly development *Page 906 
of a municipality. Moreover, the fact that the City regularly requires BW and similarly situated developers to maintain "full responsibility for the upkeep and paying all costs associated with the systems" for approximately one year does not detract from the public nature of the Lake Forest system. Greil v.Stollenwerck, 201 Ala. 303, 307, 78 So. 79, 83 (1918) (holding that "private streets" created pursuant to a contract between the City of Montgomery and a railway company werepublic and not private, notwithstanding the fact that the contract required the railway company to construct and maintain the streets).
We have examined the cases cited by BW and find them to be either distinguishable or inconsistent with settled Alabama law. For example, in Zimring-McKenzie Construction Co. v. City ofPinellas Park, 237 So.2d 576 (Fla.Dist.Ct.App. 1970), the question was whether the developer of a subdivision wasentitled to compensation from a municipality, which took "over and operate[d]," id. at 578-79, what the court deemed to be a private water and sewerage system the developer had installed under the streets of the subdivision after dedicating the subdivision withoutreservation. Id. at 577. A divided court of appeals answered that question in the affirmative, concluding that the developer did not intend to dedicate the pipes beneath the subdivision. Id. at 578. Zimring-McKenzie may be inconsistent with the settled rule in Alabama, namely, "that an unrestricted dedication of streets necessarilyincludes a dedication of the sewer lines beneath the streets." Beachcroft Props., 901 So.2d at 709 (second emphasis added). Moreover, as discussed above, this case involves pipes and a pumping station that have become an integral part of a public sewerage system. Thus,Zimring-McKenzie is not persuasive.
Sewerage District Number One of Rapides Parish v. AfcoCorp., 177 So.2d 308 (La.Ct.App. 1965), another case cited by BW, was an action commenced by Sewerage District Number One of Rapides Parish, Louisiana ("the district"), to enjoin Afco Corporation and others ("Afco") from operating a private sewerage system within the "territorial limits" of the district.Id. at 309-10. More specifically, the district claimed "exclusive control over the sewerage installations and facilities used by Afco because of their alleged dedication to the public." Id. at 310 (emphasis added). The district court denied the relief sought by the district, and the appellate court affirmed. Id. at 314-15.
In its discussion, the court noted that "[t]he developers who created the subdivisions [at issue] reserved in their plats a servitude ('easement') for public utility running across the end of each lot." 177 So.2d at 313. It also noted that "Afco's sewerage system [was] not connected at any place with
and [did] not empty into the sewerage systems operated bythe plaintiff district." Id at 312 (emphasis added). In that respect, Afco is clearly distinguishable from this case.
In short, by inserting restrictions in the final plats for Lake Forest, which purport to prevent indefinitely the owners of Forest Highlands from connecting to the sewer lines beneath the streets of Lake Forest, BW has, in effect, attempted to dedicate Lake Forest to a "part only of the public," Greil,201 Ala. at 306, 78 So. at 82, that is, to the exclusion of the lot owners of Forest Highlands and property owners "upstream" from Forest Highlands. Otherwise stated, the purported reservation prevents the City from fully integrating Lake Forest into the surrounding neighborhood, thereby unreasonably interfering with the City's authority over its subdivision development. Consequently, *Page 907 
the restrictions are void as repugnant to the dedication of Lake Forest. Cf. Kuehn v. Village of Mahomedi,207 Minn. at 520, 524, 292 N.W. at 189, 191 (reservation in 
platted subdivision purporting to "reserve to the owner . . . `the exclusive right to lay and maintain water pipes and erect tanks in any and all of the [municipality's] streets . . . so dedicated" was void as impermissibly "`circumscribing the future freedom of action of the authorities to devote the street to the wants and convenience of the public'"); and Dotty Realty Co.v. Bills Constr. Co., 4 Ohio App.2d 70, 71-72,211 N.E.2d 212, 212-13 (1965) (provision in a plat purporting to reserve a five-foot strip at the end of a dedicated street "until unspecified conditions were met," which conditions were "wholly at the whim of the dedicator," was "repugnant to the dedication of [the] property to public use, and . . . void as being contrary to public policy"). For these reasons, the trial court erred in entering a summary judgment for BW.
In that connection, we note that, in its own motion for a summary judgment and in its briefs to this Court, Beachcroft states that "[t]he City has been ready to allow [the landowners of Forest Highlands] to connect to the public sewers." Beachcroft's brief, at 38. Indeed, the City does not dispute this assertion, and it seeks a judgment from this Court removing the impediment to a sewer connection between Lake Forest and Forest Highlands. The City contends, however, that it refused to allow the connection solely because of its uncertainty as to its authority to reject BWs reservation and that its refusal wasnot arbitrary or capricious. We agree. With that caveat, we conclude that the trial court erred in refusing to enter a summary judgment for Beachcroft.
The judgment of the trial court is, therefore, reversed, and the cause is remanded with directions to enter a summary judgment for Beachcroft.
MOTION TO STRIKE GRANTED IN PART AND DENIED IN PART; REVERSED AND REMANDED WITH DIRECTIONS.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[1] "BW is the owner and developer of Lake Forest."901 So.2d at 704.
[2] The City did not move for a summary judgment.
[3] Forest Highlands is a platted subdivision in the City that abuts Lake Forest. Beachcroft is one of the developers of Forest Highlands. 901 So.2d at 704.
[4] This case does not turn on factual resolutions,
but on the proper characterization of undisputed or uncontroverted facts.