BRYAN, Judge.
Monty Allen (“Monty”) and Heather Allen (“Heather”) appeal from a summary judgment in favor of Jim Baker; Charles Lanza; South First Limited One d/b/a RE/ MAX Huntsville (“RE/MAX Huntsville”); Tommy Adams; Victor Englert; Rise Real Estate, Inc. (“Rise”); and Rise Real Estate, Inc., Parkway Plaza Branch (“Rise Parkway”). We affirm.

Factual Background

On March 30, 2006, Joey L. Harrison and Teresa D. Harrison mortgaged a house (“the house”) in Florence. Thereafter, the mortgage was assigned to The Bank of New York Trust Company, N.A., as successor to JP Morgan Chase Bank N.A., as Trustee (“The Bank of New York”). A pooling-and-servicing agreement (“the psa”) existed between The Bank of New York and Homecomings Financial, LLC (“Homecomings”), and, pursuant to the psa, Homecomings began servicing the mortgage when it was assigned to The Bank of New York. Thereafter, the Harrisons defaulted in the payment of the mortgage, and Homecomings initiated foreclosure proceedings on behalf of The Bank of New York in November 2006. The Bank of New York was the highest bidder at the foreclosure sale on December 14, 2006, and the auctioneer executed a foreclosure deed conveying legal title of the house to The Bank of New York.
In the psa, Homecomings had agreed to market the house if The Bank of New York purchased it at a foreclosure sale. Homecomings contracted for Coldwell Banker to assist Homecomings in marketing the house. It appears that Homecomings was an affiliate of GMAC Mortgage, LLC (“GMAC”), and that GMAC may also have participated in marketing the house.
Coldwell Banker, pursuant to authority delegated to it by Homecomings, employed Baker, a licensed real-estate agent who was then with RE/MAX Huntsville, to list the house for sale. Lanza is a licensed real-estate broker with RE/MAX Huntsville.
*327 In April 2007, Monty and Heather, who are married, made an offer to purchase the house for $119,000. Monty is an experienced purchaser and seller of real estate. He has held a real-estate license since 1995 or 1996 and was affiliated with RE/ MAX Elite as a real-estate agent from 2002 to 2007. In 2007, he obtained a real-estate broker’s license and became the qualifying and managing broker at RE/ MAX Xperts. By 2007, he had purchased numerous houses that had been the subject of foreclosure sales and were still subject to the mortgagors’ redemption rights when he purchased them. When he and Heather made their April 2007 offer, Monty knew that the house had been purchased by The Bank of New York at a foreclosure sale and that it would be subject to the Harrisons’ right of redemption for a year after the December 14, 2006, foreclosure sale. Monty and Heather’s April 2007 offer stated that Monty “is a licensed realtor in Alabama,” and Monty acted as his and Heather’s real-estate agent in their efforts to purchase the house.
Homecomings did not accept Monty and Heather’s April 2007 offer. Instead, Homecomings made a counteroffer to sell Monty and Heather the house for $125,000, which Monty and Heather accepted. Monty signed a written contract (“the May 2007 contract”) to purchase the house from The Bank of New York on May 17, 2007; Heather did not sign the May 2007 contract. Monty delivered earnest money in the amount of $3,000 to RE/MAX Huntsville; RE/MAX Huntsville deposited the $3,000 in its trust account. Patrick McClain, one of Homecomings’ vice presidents, signed the May 2007 contract on behalf of The Bank of New York on May 24, 2007. The May 2007 contract required that the sale be closed by June 14, 2007, and the closing was scheduled for June 14.
On June 4, 2007, Baker and RE/MAX Huntsville received a letter from Lion & Lamb Investment Recovery, LLC (“Lion & Lamb”), indicating that it had been assigned the Harrisons’ right of redemption and that it intended to redeem the house. That same day, Baker reported to Donna Arrington, an employee of Coldwell Banker who was his contact regarding the house, that Lion & Lamb had given notice that it intended to redeem the house and asked for instructions.
On June 14, 2007, as he was driving to the closing attorney’s office for the closing, Baker learned in a telephone conversation with Arrington that Homecomings had decided to cancel the closing due to Lion & Lamb’s expressing its intent to redeem the house. Homecomings’ Rule 30(b)(6), Ala. R. Civ. P., representative testified in his deposition that it was Homecomings that made the decision to cancel the June 14, 2007, closing, that Baker did not participate in making that decision, and that Homecomings decided to cancel the closing because Lion & Lamb had expressed its intent to redeem the house.
After learning that Homecomings had decided to cancel the closing, Baker proceeded to the closing attorney’s office where the closing attorney informed Monty that Homecomings had canceled the closing because Lion & Lamb had indicated that it intended to redeem the house. Monty responded by stating that he was aware that the house could be redeemed when he signed the May 2007 contract, that it was unlikely that Lion & Lamb would actually redeem the house, and that, if the sale was closed, Lion & Lamb could still redeem the house by redeeming it from him. Monty testified that the closing attorney “finally said, “What if we offer you an extension?’ ” and that Monty had said, “ ‘Okay. That’s fine.’ ” Monty and *328 Heather signed a written addendum to the May 2007 contract that provided that “[t]he new closing date shall be 6-26-07,” and Baker signed the addendum as a witness to Monty’s and Heather’s signatures. However, Homecomings’ Rule 30(b)(6) representative testified in his deposition that Homecomings did not accept Monty’s offer to extend the June 14, 2007, deadline for the closing specified in the May 2007 contract, and there is no evidence in the record indicating that the addendum was ever signed by anyone on behalf of The Bank of New York.
Monty testified in his deposition that, a couple of days before June 26, 2007, he telephoned Baker and asked him to schedule another closing and that Baker told him that the seller had not signed the addendum extending the closing. Monty further testified that Baker told him that the house would be sold to him as soon as the right of redemption expired. However, Monty testified that he was aware that, when a real-estate agent represents a property owner who is selling property, it is the property owner rather than the real-estate agent who decides whether to sell the property to a particular purchaser and that the real-estate agent cannot compel the property owner to sell the property to a particular purchaser. Moreover, he admitted that he was not relying on Baker for advice in his efforts to purchase the house.
Monty also testified that Baker told him that the house was going to be taken off the market due to Lion & Lamb’s expressing its intent to redeem the house, that Monty subsequently checked the Multiple Listing Service (“the MLS”), a database of properties listed for sale, to see if the listing for the house had been removed, and that the listing had indeed been removed. After Lion & Lamb expressed its intent to redeem the house, Homecomings coded the house as a “special-marketing” house in its internal records, which meant that the house was not being marketed and that no offers to purchase it would be considered until the special-marketing code was changed. On several occasions between June 14, 2007 and September 2007, Monty told Baker that he was going to leave the earnest money with RE/MAX Huntsville because he still wanted to purchase the house.
In mid-September 2007, Baker moved from RE/MAX Huntsville to Rise Parkway. Adams and Englert are brokers with Rise Parkway. Also in mid-September, a new listing for the house was placed in the MLS; however, Homecomings did not change the special-marketing code assigned to the house.
Lion & Lamb did not exercise its right to redeem the house before the right expired in mid-December 2007, and, consequently, Homecomings decided to market the house again. Baker informed Monty that the house was back on the market and asked him whether he was interested in purchasing it. Monty indicated that he was still interested in purchasing the house, and Baker told him to submit another letter confirming that his financing had been approved and another contract. Monty responded by stating that he already had a valid contract to purchase the house and that he did not need to submit another contract; however, on December 18, 2007, he signed and submitted another contract agreeing to purchase the house for the same price and on the same terms as the May 2007 contract. Thereafter, Southern Properties, LLC (“Southern Properties”), offered to purchase the house for $127,000. Monty testified that Baker told him that another party had made an offer to purchase the house and that, if Monty increased his offer a little, he could probably get the house. However, Monty
*329 declined to offer any more than $125,000. Homecomings sold the house to Southern Properties for $127,000. Homecomings’ Rule 30(b)(6) representative testified that it was Homecomings that made the decision to sell the house to Southern Properties instead of Monty and that Baker did not participate in that decision.

Procedural History

On April 21, 2009, Monty and Heather sued Homecomings, McClain, GMAC, The Bank of New York, Baker, RE/MAX Huntsville, Lanza, Rise, Rise Parkway, Adams, and Englert.[1] Monty and Heather claimed that all the defendants had breached the May 2007 contract, had tor-tiously interfered with that contract, and had conspired to defraud Monty and Heather. In addition, Monty and Heather claimed that Baker had committed various forms of fraud by (1) misrepresenting that Homecomings had canceled the June 14, 2007, closing because Lion & Lamb had expressed its intent to redeem the house, (2) misrepresenting that Homecomings had refused to extend the June 14, 2007, closing deadline specified by the May 2007 contract, (3) misrepresenting in late June 2007 that the house would be sold to Monty as soon as the redemption period expired, (4) misrepresenting in December 2007 that the May 2007 contract was no longer in force and that Monty needed to sign a second contract to purchase the house, (5) misrepresenting that Homecomings had refused to accept the contract signed by Monty in December 2007, and (6) suppressing the fact that another party had made an offer to purchase the house. Monty and Heather also claimed that Lan-za, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway had negligently supervised Baker. In addition, Monty and Heather claimed that Baker, Lanza, RE/ MAX Huntsville, Adams, Englert, Rise, and Rise Parkway negligently failed to prevent the house from being sold to Southern Properties and that negligent supervision by Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway had allowed the house to be sold to Southern Properties. Finally, Monty and Heather claimed that RE/MAX Huntsville owed them a refund of the $3,000 Monty had delivered to RE/MAX Huntsville as earnest money.
RE/MAX Huntsville interpleaded the $3,000, which represented the earnest money Monty had delivered to RE/MAX Huntsville. Monty and Heather moved the trial court to pay the interpleaded funds to them. The trial court granted that motion, and the interpleaded funds were paid to Monty and Heather.
Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway filed summary-judgment motions. As grounds, they asserted, among other things, that they were not hable for breach of the May 2007 contract because they were not parties to that contract; that Baker had not committed any fraud; that Monty and Heather could not prove that they had reasonably relied on any alleged fraud by Baker; that Monty and Heather could not prove a conspiracy to defraud by the movants; that Monty and Heather could not prevail on their negligence claims because, the movants said, the mov-ants did not owe Monty and Heather a duty of care because they were not Monty and Heather’s real-estate agent; that Monty and Heather could not prove the elements of their negligent-supervision claims; that Monty and Heather had been refunded their earnest money; and that Monty and Heather could not prove that *330 any of the movants had interfered with the May 2007 contract.
In response to the summary-judgment motions, Monty and Heather asserted that the defendants had breached the May 2007 contract because, they said, Lion & Lamb’s expressed intent to redeem the property was not a valid basis for canceling the closing on June 14, 2007, or refusing to perform the May 2007 contract. Monty and Heather also asserted that Baker had indeed committed fraud as alleged in the complaint; that Lanza, Adams, and Englert were vicariously liable for Baker’s torts; and that RE/MAX Huntsville and Rise Parkway had interfered with the May 2007 contract by failing to notify the seller that it was still in force before the seller sold the house to Southern Properties.
Following a hearing, the trial court, on August 2, 2011, entered a summary judgment in favor of Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway and certified that summary judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.[2] Monty and Heather timely appealed to the supreme court, which transferred the appeal to this court pursuant to §. 12-2-7(6), Ala.Code 1975.

Standard of Review

“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ ‘We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.l 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).

Analysis

Monty and Heather argue that the trial court erred in entering a summary judgment in favor of Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway with respect to Monty and Heather’s breach-of-contract claim; however, that argument has no merit because Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway were not parties to the May 2007 contract. The May 2007 contract itself establishes that it was between Monty and The Bank of New York only and that no other persons or entities were parties to it. Moreover, Monty admitted in his deposition that the May 2007 contract was between him and The Bank of New York only. A binding contract between the plaintiff and the defendant is an essential element of a breach-of-contract claim. *331 Shaffer v. Regions Fin. Corp., 29 So.Bd 872, 880 (Ala.2009) (“ ‘The elements of a breach-of-eontract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs’ performance under the contract; (3) the defendant’s nonperformance; and (4) resulting damages.’ ” (emphasis added) (quoting Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala. 2002))). Therefore, because Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway were not parties to the May 2007 contract, Monty and Heather cannot establish an essential element of their breach-of-contract claim against those defendants. Accordingly, the trial court properly entered a summary judgment in favor of those defendants with respect to the breach-of-con-traet claim.
Monty and Heather also argue that the trial court erred in entering a summary judgment in favor of Baker, Lanza, RE/ MAX Huntsville, Adams, Englert, Rise, and Rise Parkway with respect to all the fraud claims. We disagree.
 First, Monty and Heather based their fraud claims, in part, on the allegation that Baker misrepresented that Homecomings had canceled the June 14, 2007, closing because Lion & Lamb had expressed its intent to redeem the house. However, the undisputed evidence established (1) that it was the closing attorney rather than Baker who told Monty that Homecomings had canceled the June 14, 2007, closing because Lion & Lamb had expressed its intent to redeem the house and (2) that Homecomings had indeed canceled the June 14, 2007, closing because Lion & Lamb had expressed its intent to redeem the house. Thus, Baker did not make the alleged misrepresentation, and the alleged misrepresentation was actually a truthful statement. A false representation by the defendant is an essential element of a fraud claim based on a misrepresentation. See, e.g., Reynolds Metals Co. v. Hill, 825 So.2d at 104-05. Consequently, the undisputed evidence negated the existence of an essential element of Monty and Heather’s fraud claims insofar as they were based on the allegation that Baker misrepresented that Homecomings had canceled the closing because Lion & Lamb had expressed its intent to redeem the house, and, therefore, the trial court properly entered a summary judgment insofar as the fraud claims were based on that allegation.
Second, Monty and Heather based their fraud claims, in part, on the allegation that Baker misrepresented that Homecomings had refused to extend the June 14, 2007, closing deadline specified by the May 2007 contract. However, the undisputed evidence established that Homecomings had indeed refused to extend that deadline. Thus, insofar as Monty and Heather’s fraud claims were based on the allegation that Baker misrepresented that Homecomings had refused to extend the June 14, 2007, closing deadline, the undisputed evidence negated the existence of an essential element of those claims, i.e., a false representation by the defendant, see, e.g., Reynolds Metals, and, therefore the trial court properly entered a summary judgment insofar as the fraud claims were based on that allegation.
Third, Monty and Heather based their fraud claims, in part, on the allegation that in late June 2007 Baker misrepresented to Monty that the house would be sold to him as soon as the right of redemption expired. However, “[a]n essential element of any fraud claim is ‘reasonable reliance.’ ” Mantiply v. Mantiply, 951 So.2d 638, 658 (Ala.2006). Monty, who was himself a licensed and experienced real-estate agent in late June 2007, admitted that he was aware that, when a real- *332 estate agent represents a property owner who is selling property, it is the property owner rather than the real-estate agent who decides whether to sell the property to a particular purchaser and that the real-estate agent cannot compel the property owner to sell the property to a particular purchaser. Consequently, Monty could not have reasonably relied on Baker’s representation that the house would be sold to Monty as soon as the right of redemption expired, and, therefore, the trial court properly entered a summary judgment insofar as the fraud claims were based on that allegation.
Fourth, Monty and Heather based their fraud claims, in part, on the allegation that Baker misrepresented in December 2007 that the May 2007 contract was no longer in force and that Monty needed to sign a second contract to purchase the house. However, assuming, without deciding, that that statement was not true, Monty could not have reasonably relied on it because, as he admitted in his deposition, he was an experienced real-estate agent, he was acting as his and Heather’s real-estate agent, he knew that Baker was not representing him and Heather, and he was not relying on Baker for advice in his efforts to purchase the house. As an experienced real-estate agent, Monty was capable of reading the May 2007 contract and determining whether it was still in force or had expired and whether he needed to sign a second contract to purchase the house. Accordingly, the trial court properly entered the summary judgment insofar as the fraud claims were based on the allegation that in December 2007 Baker misrepresented that the May 2007 contract was no longer in force and that Monty needed to sign a second contract to purchase the house.
Fifth, Monty and Heather based their fraud claims, in part, on the allegation that Baker misrepresented that Homecomings had refused to accept the contract signed by Monty in December 2007. However, the undisputed evidence established that Homecomings had indeed refused to accept the contract signed by Monty in December 2007 and, instead, had entered into a contract to sell the house to Southern Properties for $127,000. Thus, insofar as the fraud claims were based on the allegation that Baker misrepresented that Homecomings had refused to accept the contract signed by Monty in December 2007, the undisputed evidence negated the existence of an essential element of those claims, i.e., a false representation. Accordingly, the trial court properly entered a summary judgment insofar as the fraud claims were based on that allegation.
The sixth and final basis for Monty and Heather’s fraud claims was their allegation that Baker suppressed the fact that another party had made an offer to purchase the house. However, Monty admitted in his deposition that Baker had told him in December 2007 that another party had made an offer to purchase the house and that, if he increased his offer a little, he could probably get the property. Thus, the undisputed evidence negated the existence of an essential element of a fraud claim based on suppression, i.e., the defendant’s suppression of the fact he or she is alleged to have suppressed, see, e.g., Johnson v. Sorensen, 914 So.2d 830, 837 (Ala. 2005), and, therefore, the trial court properly entered a summary judgment insofar as the fraud claims were based on the allegation that Baker suppressed the fact that another party had made an offer to purchase the house.
Monty and Heather also argue that the trial court erred in entering a summary judgment with respect to their negligence claims because, they say, Baker *333 “negligently handled the contract negotiations.” (Monty and Heather’s brief at p. 3.) However, the record does not indicate that Monty and Heather presented that argument to the trial court in opposition to the summary-judgment motions, and, consequently, we cannot consider it. See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala. 2000) (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.” (emphasis omitted)).
Monty and Heather have not argued that the trial court erred in entering a summary judgment with respect to (1) their claims that Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway negligently failed to prevent the house from being sold to Southern Properties, (2) their claims of negligent supervision, or (3) their claim seeking a refund of their earnest money. Therefore, they have waived any error committed by the trial court in entering the summary judgment with respect those claims. See Bo-shell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”).
Monty and Heather do argue that the trial court erred in entering a summary judgment insofar as they claimed that Lanza, RE/MAX Huntsville, Adams, Eng-lert, Rise, and Rise Parkway were vicariously liable for Baker’s alleged fraud and negligence. However, because Monty and Heather have failed to establish that the trial court erred in entering a summary judgment in favor of Baker with respect to the fraud and negligence claims against him, Monty and Heather cannot prevail on their argument that the trial court erred in entering a summary judgment with respect to their claims that Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway were vicariously liable for Baker’s alleged fraud and negligence. See, e.g., H & S Homes, L.L.C. v. McDonald, 978 So.2d 692, 694 (Ala.2007) (holding that a judgment on the merits in favor of an agent exonerates the agent’s master from vicarious liability for the agent’s alleged torts).
In addition, Monty and Heather argue that- the trial court erred in entering a summary judgment with respect to their conspiracy-to-defraud claim. However, “[i]t is well established that ‘liability for civil conspiracy rests upon the existence of an underlying wrong and [that] if the underlying wrong provides no cause of action, then neither does the conspiracy.’ ” Ex parte Alabama Dep’t of Tramp., 764 So.2d 1263, 1271 (Ala.2000) (quoting Jones v. BP Oil Co., 632 So.2d 435, 439 (Ala. 1993)). Thus, because Baker, Lanza, RE/ MAX Huntsville, Adams, Englert, Rise, and Rise Parkway were entitled to a summary judgment with respect to Monty and Heather’s fraud claims, they were also entitled to a summary judgment with respect to the conspiracy-to-defraud claim. Id.
Monty and Heather also argue that the trial court erred in entering a summary judgment in favor of Baker, Lanza, RE/ MAX Huntsville, Adams, Englert, Rise, and Rise Parkway with respect to the claim of intentional interference with contractual relations because, Monty and Heather say, Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway interfered with the May 2007 contract “by attempting to coerce and induce [Monty] into signing a 2nd unnecessary contract.” (Monty and Heather’s brief at p. 25.) However, the record does not indicate that Monty and Heather presented that argument to the trial court in opposition to the summary-judgment mo *334 tions, and, consequently, we cannot consider it. See Ryals.
Finally, Monty and Heather argue that the trial court erred in entering a summary judgment with respect to the claim of intentional interference with contractual relations because, they say, “[b]oth Rise Realty and RE/MAX Huntsville interfered with Monty Allen’s contract by failing to notify the sellers and the real estate companies there was an existing valid contract with Monty and Heather Allen when the property sold to Southern Properties.” (Monty and Heather’s brief a p. 61.) However, the only legal authority they have cited in support of that argument is a case listing the essential elements of the tort of intentional interference with contractual relations. Monty and Heather’s theory is that, despite Homecomings’ knowledge of the existence of the May 2007 contract due to its having prepared and signed it on behalf of The Bank of New York, RE/ MAX Huntsville and Rise Parkway committed the tort of intentional interference with contractual relations by failing to notify Homecomings of the existence of the May 2007 contract. That is a novel theory, and Monty and Heather’s failure to cite any legal authority other than a case listing the essential elements of the tort of intentional interference with contractual relations is insufficient to warrant a reversal of the summary judgment as to it. See QORE, Inc. v. Bradford Bldg. Co., 25 So.3d 1116, 1125 (Ala.2009) (“ ‘ “Authority supporting only ‘general propositions of law1 does not constitute a sufficient argument for reversal.” ’ ” (quoting Walden v. Hutchinson, 987 So.2d 1109, 1121 n. 4 (Ala.2007), quoting in turn Beachcroft Props., LLP, 901 So.2d 703, 708 (Ala.2004), quoting in turn Geisenhoff v. Geisenhojf 693 So.2d 489, 491 (Ala.Civ.App.1997))).
Accordingly, for the reasons discussed above, we affirm the summary judgment in favor of Baker, Lanza, RE/MAX Huntsville, Adams, Englert, Rise, and Rise Parkway.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Monty and Heather also sued RE/MAX, Inc.; however, RE/MAX, Inc., was never served with process and, consequently, was never made a party to this action.

. The claims against Homecomings, McClain, GMAC, and The Bank of New York remained pending.